## CONSOLIDATED GAS SERVICE CO. v. TYLER.

No. 24414. Dec. 8, 1936.

Conrad C. Mount and Howard F. Wilson, for plaintiff in error.

M. L. Opperud and O. B. Martin, for defendant in error.

RILEY, J. This is an appeal from a judgment awarding damages in a condemnation proceeding.

The proceedings were instituted by the

Consolidated Gas Service Company against O. T. Tyler, in the district court of Kay county.

The petition set out that plaintiff was then maintaining a gas pipe line across lot 5, in block 176, in Blackwell, running the length of said lot from west to east about 150 feet; that it believed that said pipe line was installed on the lot about 1925, by the Blackwell Oil & Gas Company with the oral permission of the Blackwell Mill & Elevator Company, the then owner of said lot; that plaintiff or its predecessor had purchased the line from the Blackwell Oil & Gas Company on July 1, 1928. It then alleged: "That defendant above named is the owner or claims to be interested in said land. That whatever interest defendant may have in said property was acquired by deed dated June 16, 1926." Then follows the usual allegation of effort to effect an amicable agreement with defendant and inability so to do.

The prayer was the usual one for the appointment of commissioners to view the premises and assess the damages.

Notice was served upon defendant, and commissioners were thereafter appointed.

The petition, order, and return of the commissioners mentioned and described only lot 5, block 176, as the property affected.

A plat filed, attached to and filed with the petition, shows the pipe line running along and very near the south line of said lot.

The report of the commissioners indicated that they considered the right of plaintiff to maintain the pipe line and the right of ingress and egress to patrol, inspect, and repair the line when necessary, and fixed the damages at $500.

Defendant, apparently being dissatisfied with the award, filed in due time his written demand for a jury trial.

At the trial it developed that defendant was also the owner of lot 6, adjoining lot 5 on the south. Evidence was permitted to go to the jury as to damages to both lots. The jury returned a verdict assessing defendant's damages to lot 5 at $1,650 and to lot 6 at $1,350, or a total of $3,000.

Judgment was entered accordingly, and plaintiff appeals.

It is first contended that the court erred in admitting evidence by defendant of offers to lease the property; comparing the value of defendant's property with other property in the city of Blackwell, and regarding the holding of a lease on a portion of the railroad right of way adjacent to defendant's property, and between his property and the railroad tracks, without any written lease being offered in evidence, or its duration or terms.

Defendant was permitted to testify, over the objection of plaintiff, that he had a number of offers to lease part of lots 5 and 6; that the parties refused to lease when they learned of the gas line.

The court permitted this, not to establish value, but on the theory that it tended to prove damages. In this, as so limited, there was no error, as it tended to show the effect of the gas line on defendant's property.

Defendant was also allowed to testify that he had offers from several oil companies of from $40 up to $110 per month for the west or front 75 feet of the lots without the gas line on lot 5.

The purpose of this evidence, as stated by counsel for defendant, was to establish the earning power without the line "which would be used in determining the value of the lots."

In this there was error.

Substantially the same question was before the court in Page v. Oklahoma City, 129 Okla. 28, 263 P. 448. There evidence of the same character was admitted on behalf of the city, in an effort to show that the property there claimed to have been damaged by the discharge of sewage upon the land was of as much value after the sewage had been cast upon it as the owner claimed it was worth before.

It was there held:

"Suit having been filed for damages caused by the emptying of a city sewer upon plaintiff's land, it was error to admit the testimony of a witness that since the filing of the suit and just before the trial he had offered to pay plaintiff a stated amount per acre for her land."

In the opinion it was said:

"This is a class of testimony the admission of which, at best, is dangerous, and at all times is safely rejected."

In St. Joseph & D. C. R. Co. v. Orr, 8 Kan. 419, there is a statement, quoted with approval in Page v. Oklahoma City, supra, as follows:

"We can find no case nor can we recall any principle that would permit the proof of an offer for property as tending to show its value. It is a kind of proof that is so easily manufactured that its admission would be too dangerous to be tolerated. For the error in admitting this testimony the case must be reversed and a new trial awarded."

The court also cited Sharp v. United States, 48 L. Ed. 211, where the Supreme Court of

the United States, in sustaining the trial court in rejecting this class of testimony, said:

"A reference to the authorities shows them to be almost unanimous against receiving evidence of this kind."

A witness was permitted to testify over the objection of plaintiff as to the value of certain other property in the city of Blackwell said to be desirable as an industrial site as compared to that of defendant. That is, as to the site he thought was the most accessible and most valuable. This we think was improper. The question at issue was the value of defendant's property as of the date when the award of the commissioners was deposited in court, with and without the pipe line located thereon. The value or comparative value of other property was immaterial.

Another witness was permitted to testify to the value of lot 6 to him, the witness. This was improper. The value to be considered was the market value and not the value of the land to the witness himself.

It is next contended that the court erred in permitting defendant to testify that he had a lease or two leases from the railroad company for a portion of its right of way lying between defendant's lots and the railroad track.

The contention is that this evidence should not have been admitted because the question did not cover the date the amount of the award of the commissioners was paid into court. This particular objection was not specifically called to the attention of the trial court. Had it been, the defendant would have been given an opportunity to show, if he could, that he had the lease or leases on the date mentioned.

Objection was sustained to evidence tending to show the terms of the leases, not because such evidence was not material, but because oral evidence was not admissible to show the terms of written leases. Defendant was entitled to show the terms, duration, etc., of his leases by proper evidence, viz., the leases themselves, if in writing.

It is contended that the court erred in permitting defendant to introduce evidence tending to show damage to both lots 5 and 6.

Plaintiff's petition made no mention of lot 6. The award of the commissioners made no mention of lot 6, nor did defendant in his written demand for a jury trial, or other pleading, mention the fact that he was the owner of lot 6, or make any claim of damage to both lots. The first mention thereof was in the opening statement of counsel for defendant.

It is contended that if defendant intended to include damage to lot 6, or both lots together, he should have filed some pleading to show and give notice of his intention to include lot 6 in his claim of damage.

But when evidence was offered by defendant, plaintiff made no claim of surprise. The only objection was that such evidence was incompetent, irrelevant, and immaterial as to lot 6.

The position of plaintiff was that there was no pleading under which defendant could properly introduce evidence as to lot 6, either separately or in connection with lot 5.

As we view the law, taking into consideration the evidence of defendant to the effect that he bought these two lots at the same time and had in view the use of them together as one tract, either a warehouse site, elevator site, or a wholesale and retail gasoline station, he was clearly entitled to show, if he could, damage to both lots, but he should have filed some pleading or at least given notice of his intention so to do in his demand for a jury trial.

The omission is one that may upon another trial be cured by a proper pleading.

Finally, it is contended that the court erred in overruling plaintiff's demurrer to defendant's evidence.

The position is that, inasmuch as defendant admitted that the gas line was on lot 5 at the time he acquired title thereto, and made no showing of an assignment to him by the former owner of the chose in action for the injury to the lot, he is not entitled to recover damages in this action.

The contention cannot be sustained.

Plaintiff cites a number of cases holding, in effect, that where a corporation, authorized to exercise the right of eminent domain, takes possession of land without any proceeding to condemn, the right to compensation accrues to the owner at once and does not pass to a subsequent purchaser by a mere conveyance of the land.

But an examination of the cases cited shows that they are all cases where railroad companies took possession of the land, constructed and maintained railroad tracks thereon, and were maintaining such tracks at the time the land was conveyed. The reason given for denying the subsequent purchaser compensation is that the railroad tracks being upon the land at the time he purchased, he did so with knowledge of the existence of the railroad track. It is generally said that where the owner stands by and

sees a railroad company take possession of his land for railroad purposes and building lasting improvements thereon, such owner may not thereafter resort to trespass or ejectment. This upon the theory that the public has acquired an interest in the land. The only remedy is said to be an action for damages, or in some jurisdictions either an action for damages or an action by himself in the nature of condemnation.

But here we have an entirely different situation. The undisputed evidence is that the pipe line was buried some 24 or 30 inches under the surface; that defendant had no knowledge whatever of its existence when he purchased the lots. There is no evidence whatever that the former owner consented to the laying of the pipe line or had any knowledge thereof. There is nothing whatever tending to show that defendant purchased at a reduced price because of the existence of the pipe line. There is nothing in the record to show an estoppel against defendant or the former owner.

It is well settled that: "An estoppel cannot be set up against a party ignorant of the true state of affairs, or whose conduct was based upon pure mistake." St. L. & S. F. Ry. Co. v. Mann, 79 Okla. 160, 192 P. 231.

So far as the record in this case discloses, there was nothing that would have estopped the former owner from bringing an action for trespass or ejectment as long as he owned the land, for there is nothing to show that the pipe line was laid with his knowledge or consent. There is nothing in the record to show an estoppel against the defendant from bringing such an action. We gather from the record that an action was about to be brought by defendant when plaintiff invoked the jurisdiction of the court to condemn whatever interest defendant had in lot 5. Thereby it conceded that defendant had some interest in the lot which it sought to condemn. It recognized his right to some compensation when on November 19, 1931, it paid into court the award of commissioners made under proceedings instituted by it. If plaintiff was relying upon utter lack of the right of compensation, then why did it deem it necessary to commence this action?

In view of the facts disclosed by the record, this case is not governed in this respect by the cases cited, or, at least, may be recognized as an exception to such rule.

For the error pointed out in the admission of evidence, judgment is reversed and the cause remanded for a new trial.

McNEILL, C. J., OSBORN, V. C. J., and BUSBY and PHELPS, JJ., concur.