ROGERS v. OKLAHOMA CITY
(two cases).

Nos. 30235, 30236.   Jan. 13, 1942.

*120 P. 2d 997.*

J. T. Rogers and D. W. Eaton, both of Wichita, Kan., and Arthur H. Dolman, of Oklahoma City, for plaintiff in error.

A. L. Jeffrey, Municipal Counselor, Warren W. Connor, Asst. Municipal Counselor, and W. H. Brown, Special Asst. Municipal Counselor, all of Oklahoma City, for defendant in error.

RILEY, J.   The parties are in the same relation as in the trial court and will be referred to here as plaintiff and defendant, respectively.

Case No. 30235 involves the south 40 feet of lots 30, 31, and 32 in block 36, original townsite of the city of Oklahoma City, and a strip of land ten feet wide extending the width of and adjoining said lots on the south, being a part of the north half of what was formerly the alley running through said block.

Case No. 30236 involves lot 8 in block 21, original townsite of said city.

The Choctaw Coal & Railway Company acquired a right of way across the property involved in both cases in 1891, and thereafter transferred its title to the Chicago, Rock Island & Pacific Railroad Company. The railroad company used the same until about December 4, 1930, at which time it abandoned use of same and conveyed its title to the defendant herein. The city took possession, incorporated same into its public park system, and has ever since devoted the same to public use as a part of a public park.

On December 4, 1930, when defendant went into possession of the parts of lots 30, 31, and 32, J. D. Crellin was the owner of said parts of lots. On April 11, 1931, Crellin, by quitclaim deed, conveyed to W. L. Missimore, and April 14, 1931, Missimore, by quitclaim deed, conveyed to plaintiff.

In case No. 30236, G. F. Walrath, J. A. Walrath, N. E. Walrath, Viola Della Walrath Hood, Ada Lee Walrath Ford, and Arminta Walrath, heirs at law of Martin Luther Walrath, deceased, the original owner of the lot involved, were the owners. April 16, 1931, said heirs, by quitclaim deed, conveyed to W. L. Missimore, and April 20, 1931, Missimore, by quitclaim deed, conveyed to plaintiff.

Plaintiff alleges that about May 1, 1931, he commenced action in the district court of Oklahoma county to quiet

his title and for ejectment; that said causes were pending in said court until shortly before February, 1940, when they were dismissed, and these proceedings were instituted in lieu thereof.

These proceedings are for the assessment of compensation for the taking of said property, in condemnation commenced by plaintiff, authorized by statute, where defendant, having the right to exercise the power of eminent domain, failed or refused so to do, but seized and took possession and devoted the property to public use, without resorting to condemnation or without payment of compensation.

The pleadings as finally amended were such as to show that the city took possession of said premises on December 4, 1930, claiming by its deed from the Chicago, R. I. & P. Ry. Company; that plaintiff did not own or claim any interest in said property until April, 1931, four months or more after the city took possession.

In this connection plaintiff alleged:

"Plaintiff further states that the action of the city in so seizing said property and appropriating the same to its own use was wrongful and without right or authority in law, but that the said city without right or authority did, on or about December 4, 1930, seize said property and since such time has placed valuable and lasting improvements thereon with full notice and with full knowledge that plaintiff was resisting such appropriation and such use by said city."

Upon the petition of plaintiff, appraisers were appointed to assess the damages. After their report was filed, defendant contested and demanded a jury trial. Thereafter plaintiff's petitions were amended and defendant filed its demurrers. The demurrers were sustained, and plaintiff announced that he would stand upon his petitions as amended, and judgment was entered dismissing the petitions, and plaintiff appeals. The two cases are consolidated.

The sole question raised is whether the quitclaim deeds from the owners to Missimore and like deeds from Missi-more to plaintiff, all executed after defendant city took exclusive possession of the property and devoted it to public use, convey the right to recover compensation for the value of said lots. Plaintiff asserts the affirmative and defendant contends to the contrary.

Plaintiff first cites section 24, art. 2, of the Constitution, which provides that private property shall not be taken or damaged for public use without just compensation. Plaintiff contends that under that part of said section which provides that "until the compensation shall be paid to the owner or into court for the owner, the property shall not be disturbed or the proprietary rights of the owner divested," no title passes until compensation has been paid or deposited. It is contended that, since neither Crellin, Missimore, the Walrath heirs, nor plaintiff have been paid compensation, the defendant has acquired no title whatever, and that plaintiff, now being the owner, is entitled to have the city's title determined by condemnation proceedings and compensation paid to him.

The contention that the city has acquired no title whatever under the facts pleaded cannot be sustained. In City of Seminole v. Fields, 172 Okla. 167, 43 P. 2d 64, it is held:

"Where a city, vested with the power of eminent domain, enters into actual possession of land necessary for its corporate purposes, with or without the consent of the owner, and the owner remains inactive while valuable improvements are being constructed in close proximity to the property, the use of which improvements require a continued use of land, and the owner thereafter brings an action for damages to recover the total value of the land, the appropriation will be treated as equivalent to title by condemnation."

Therein it was pointed out that there was no contest concerning the fact that the city had appropriated the land and constructed a lake thereon.

In the instant case, it is conceded and plaintiff alleged in his petition:

"That the defendant, city of Oklahoma City, having the right to purchase real property for public purposes, and also having the power of eminent domain and the right to condemn real property for such purposes, did, on or about December 4th, 1930, without having purchased said property or made any effort or offer to do so; and without any right or authority on its part, but unlawfully and wrongfully, enter into possession of said real estate for the declared purpose of appropriating and using it for a public park of said city, and then enclosed it and appropriated, applied and devoted it to use as a public park of said city, and ever since has held possession of it and now holds possession of it for that purpose, and is now appropriating, applying and devoting it to the use and purpose of a public park, and as a part of the public park system of said city. . . ."

Under the rule stated in City of Seminole v. Fields, supra, and the cases therein cited, the appropriation of the city in the manner alleged in the petition must be treated as equivalent to title by condemnation.

It is asserted that this case differs from City of Seminole v. Fields, supra, and the cases therein cited, in that plaintiff acquired his title before the defendant had expended any considerable amount of money in improving the property. But, as stated, plaintiff alleges that the city went into exclusive possession on December 4, 1930, and then enclosed it and appropriated, applied, and devoted it to use as a public park. Then the city was in open, notorious, and exclusive possession when plaintiff acquired his title. The difference then would be one of degree. If the city had appropriated, applied, and devoted the property to a public use, such appropriation must be treated as equivalent to title by condemnation.

Plaintiff cites Nixon v. Marr, 190 Fed. 913, 36 L.R.A. (N. S.) 1067. It is contended that the effect of that decision is that so long as title does not pass to the condemnor, a conveyance by the owner carries with it the right to collect the compensation or award. The application of that case to the instant case is diffi-cult because we have already seen that the rule in this state is that actual entry and appropriation to public use without proceedings to condemn are equivalent to title by condemnation. Furthermore, in that case the purchaser had entered into a valid and binding contract to purchase, and had paid a part of the purchase money before the city had taken any steps to acquire title by condemnation or otherwise. The same is true to some extent in Morris v. Board of County Commissioners of Marshall County, 169 Okla. 600, 38 P. 2d 945, another case cited by plaintiff. There the mortgagee acquired a lien upon the property long before condemnation proceedings were commenced, and before appropriation of the land to public use.

Plaintiff also cites Consolidated Gas Service Co. v. Tyler, 178 Okla. 325, 63 P. 2d 88, as sustaining his contention. There a party who had acquired title to the land after a pipe line was laid across it was held entitled to the condemnation money in a proceeding thereafter commenced by the pipe line company against him. The facts in that case were such as to constitute an exception to the general rule. In that case the gas company, in the first instance, recognized that defendant had some interest in the lot which it sought to condemn. The evidence showed that the pipe line had been laid across the lot and buried so its existence was not known to the defendant, nor to defendant's grantor. As against the defendant and his grantor, neither the gas service company nor its grantor held open, notorious, adverse possession.

We held that in view of the facts disclosed by the record in that case, it was not governed by the rule sought to be invoked, and that it came within an exception to the rule.

In Oklahoma City v. Wells, 185 Okla. 369, 91 P. 2d 1077, a case involving a lot in one of the same blocks, taken possession of by the city at the same time and in the same way, we held that the date actual possession was taken (December 4, 1930) was the date upon which limitation or laches should begin

to run, and also the date from which interest on the amount awarded as compensation should be computed.

Plaintiff cites a number of cases from other jurisdictions on the question of when title passes so as to fix the party entitled to compensation. Since we have held that the appropriation by the city as of December 4, 1930, was equivalent to title by condemnation, it is unnecessary to discuss the cases from other jurisdictions on the question of when such title passes.

In support of the judgment defendant cites a number of cases to the effect that, when a corporation, including municipalities, having the right to exercise the power of eminent domain, enters into possession of land for its corporate purposes, whether with or without the consent of the owner, the right to receive payment or compensation from the corporation belongs to the owner of the land at the time the corporation took possession, and does not pass to a subsequent grantee unless so expressly assigned or transferred to such grantee. The first case cited and relied upon is Peckham et al. v. Atchison, T. & S. F. R. Co. et al., 88 Okla. 174, 212 P. 427, wherein it is said:

"The rule also appears to be well established that the vendee of land, upon which a railway company has entered, takes such land subject to the burden of the railway and the right of payment by the railway company, if it entered by virtue of an agreement to pay, or to damages if the entry was unauthorized, and the right of payment or to damages belongs to the owner of the land at the time the railway company took possession, and such right to payment does not pass to the grantee of the land under a deed made subsequent to the time unless expressly conveyed therein."

The court in support of that statement cited Roberts v. Northern Pacific Ry. Co,. 158 U. S. 1, 15 S. Ct. 756, 39 L. Ed. 873, wherein it is said:

"It is well settled that where a railroad company, having the power of eminent domain, has entered into actual possession of land necessary for its corporate purposes, whether with or without the consent of the owner of such lands, a subsequent vendee of the latter takes the land subject to the burthen of the railroad, and the right to payment from the railroad company, if it entered by virtue of an agreement to pay, or to damages, if the entry was unauthorized, belongs to the owner at the time the railroad company took possession."

This appears to be the general rule.

There are exceptions to the rule, but it may be said that it is almost universally applied. Early cases where the rule was applied are: Rand v. Townshend, 26 Vt. 670, decided in 1854; Hentz v. The Long Island Railroad Company (N. Y.) 13 Barb. 646, and The Central Railroad Company of New Jersey v. Levi Hetfield, Jr., 29 N.J.L. 206. In the latter case, the court, discussing the question, stated:

"There is another corollary which follows from the same principles. Where land is thus seized unlawfully, the whole injury is done at the first seizure. The state holds the land; the owner is entitled to its full value. It is seized, if seized at all, for the whole period it is to serve as a public user. The whole injury is to the person who is owner at the first seizure. If a person buys afterward he buys subject to the public user, and all his rights are subject thereto. There can be no subsequent trespass as against him, and the defendant can defend himself under the general issue without notice. Lands in such cases are seized by the public for great public trusts. . . . It follows that if the defendants seized this land without payment or consent, they are liable to the person who owned the land at the time of the seizure as for a condemnation, and not to any subsequent owner. The plaintiff's grantor, therefore, if anybody, is the one entitled to damages. . . . So that, whether the defendants took possession originally rightfully or wrongfully, it is manifest that the present plaintiff has no legal cause of action."

Many other cases are cited wherein the rule there stated has been applied. Some of them are Stubblefield v. Houston, E. & W. T. Ry. Co. (Tex. Civ. App.) 203 S. W. 936; Howland v. Inhabitants of Greenfield, 231 Mass. 147, 120 N. E.

394; Sebree v. Huntingdon Water Supply Co., 267 Pa. 420, 110 A. 142; Alabama Great Southern R. Co. v. Brown, 215 Ala. 533, 112 So. 131; Federal Land Bank of Louisville v. Monroe County, 165 Tenn. 624, 57 S. W. 2d 553; Cleveland, C. & St. L. Ry. Co. v. Vettel, 81 Ind. App. 625, 133 N. E. 605; Wapsipinicon Power Co. v. Waterhouse, 186 Iowa, 524, 167 N. W. 623; Smith v. Collins, 199 Ky. 770, 251 S. W. 979. Other cases are collected and cited in Gordon v. Cadwalader et al., 172 Cal. 254, 156 P. 471. See, also, Shell Petroleum Corporation et al. v. Town of Fairfax, 180 Okla. 326, 69 P. 2d 649.

The rule being thus well settled, defendant's demurrers were properly sustained.

Judgment affirmed.

CORN, V. C. J., and OSBORN, BAYLESS, GIBSON, HURST, and DAVISON, JJ., concur. ARNOLD, J., dissents. WELCH, C. J., absent.