125 P.3d 1183 (2005)
2005 OK 69
STATE of Oklahoma, ex rel. DEPARTMENT OF TRANSPORTATION, Petitioner,
v.
Honorable Dynda R. POST, Respondent, and
Jonnie Lee Biswell and Bessie M. Biswell, husband and wife; Bessie A. Biswell, LLC; and Dick York; The Kallay Group, Inc., Real Parties in Interest.
No. 102,101.
Supreme Court of Oklahoma.
October 11, 2005.
Kelly F. Monaghan, Holloway & Monaghan, Tulsa, OK, for Petitioner, State of Oklahoma, ex rel., Department of Transportation.
K. Ellis Ritchie, K. Ellis Ritchie, P.C., Pryor, OK, for Real Parties In Interest, Jonnie Lee Biswell, Bessie M. Biswell, Bessie A. Biswell, LLC, Dick York, and The Kallay Group, Inc.
*1185 WATT, C.J.
¶ 1 The original action involves the petitioner's, State of Oklahoma, ex rel. Department of Transportation's (condemner/Department), condemnation of real property owned by the real parties in interest, Jonnie Lee Biswell and Bessie M. Biswell, husband and wife, Bessie A. Biswell, LLC, Dick York and The Kallay Group, Inc. (collectively, condemnees/land owners). Although the condemner paid the commissioners' award into court and it was disbursed to the condemnees, the land owners were successful in receiving a ruling from the trial judge that no taking had occurred in the proceeding because the Department had not taken complete physical possession of the property.
¶ 2 Original jurisdiction is assumed and a writ of mandamus issued.[1] We hold that the "date of taking" was established when the condemner paid the commissioners' award into court. Our determination is supported by the Oklahoma Constitution art. 2, § 24,[2] statutory provisions[3] and this Court's jurisprudence.[4]

FACTS
*1186 ¶ 3 Pursuant to 69 O.S.1991 § 1203,[5] the Department instituted a condemnation proceeding against the land owners in December of 2000. After proper notice, commissioners were appointed returning a report, filed on May 25, 2001, setting just compensation at $4,300,000.00. On June 6 and 11, 2001, respectively, the land owners and the Department filed demands for jury trial.
¶ 4 The condemner paid the commissioners' award into court for the benefit of the land owners on July 12, 2001. The following day, the land owners filed an application for disbursement and the court clerk was ordered to disburse the $4,300,000.00. The actual disbursal was made on July 18, 2001, to the land owners' attorney in trust for his clients.
¶ 5 On January 28, 2005, the land owners filed a motion to judicially determine the date of taking asserting that there had been no taking because the Department was not in complete physical possession of the property. Although the condemner argued that the date of taking was established by the payment of the commissioners' award into court, the trial judge sustained the land owners' motion. She determined that the date of taking had yet to occur. The ruling was based on a finding that taking could be established only when two conditions were met: 1) payment of the commissioners' award into court or to the land owners; and 2) the condemner taking actual physical control of the property.
¶ 6 The Department filed an application to assume original jurisdiction and petition for writ of mandamus, or in the alternative, writ of prohibition on May 11, 2005. On the last day of May, the land owners' filed their response.

CONDEMNATION ACTIONS VERSUS INVERSE CONDEMNATION PROCEEDINGS
¶ 7 Condemnation proceedings, such as the one here, differ significantly from inverse condemnation actions. In a condemnation action, the government, as plaintiff, proceeds against the landowner, as defendant. The landowner, as plaintiff, proceeds against the government, as a defendant, for its encroachment in an inverse condemnation proceeding. In an inverse condemnation case, the commissioners' appraisal is irrelevant to and does not decide the issue of taking. Rather, unless confessed, critical in an inverse condemnation cause is the taking issue which remains a fact question.[6]
¶ 8 In condemnation, the fact of a taking is not the issue  an entity is exercising its right of eminent domain. Commissioners assess the value of the condemned property and, unless one of the two parties challenges the award, the commissioners' determination governs.[7] Furthermore, reimbursement for expenses in condemnation proceedings and inverse condemnation actions are governed by different statutory procedures. While 27 O.S.2001 § 11, governs expenses which may be recovered in a regular condemnation proceeding, § 12 provides the reimbursement schedule for expenses in an inverse condemnation proceeding.

DISCUSSION
¶ 9 The "date of taking" is established when the commissioners' award is paid into court or to the property owner.
¶ 10 The Department argues that only one condition must be met to accomplish a taking  the commissioners' award must be paid  either into the court or directly to the property owner. The land owners assert *1187 that two actions must take place  payment of the commissioners' award and actual physical control of the property  before a taking occurs. We disagree.[8]
¶ 11 The Oklahoma Constitution art. 2, § 24 does not support the land owners' arguments. It provides in pertinent part:
"Private property shall not be taken or damaged for public use without just compensation.... Until the compensation shall be paid to the owner, or into court for the owner, the property shall not be disturbed, or the proprietary rights of the owner divested. When possession is taken of property condemned for any public use, the owner shall be entitled to the immediate receipt of the compensation awarded, without prejudice to the right of either party to prosecute further proceedings for the judicial determination of the sufficiency or insufficiency of such compensation...." [Emphasis added.]
The constitutional provision sets up only one condition a condemner must meet before a land owner's rights may be disturbed  payment of compensation to the owner or into court for the owner's benefit. It is the payment of just compensation that allows the taking.[9] Actual physical possession is not a condition of determining whether the property is "taken". Rather, it is the factor which triggers the land owner's right to demand compensation if not previously paid. This interpretation of art. 2, § 24 is consistent both with the applicable condemnation provisions and with Oklahoma jurisprudence.
¶ 12 Pursuant to 69 O.S.2001 § 1203(d), a condemner has the absolute right to possession and to enter condemned property when the award is paid either into court or to the property owner.[10] Subsection (e)(1) of the statute mandates that although the adequacy of the commissioners' award may be reviewed by exception or litigated at a later date, the Department has a continuing right of possession under the original appraisal.[11] Furthermore, subsection (f) provides that if the cause is appealed, the Department's work on the condemned property will not be interrupted if the award of the commissioners, or jury, as the case may be, has been deposited with the court clerk for the owner.[12] Clearly, the applicable statutory *1188 provisions establish that the rights of the Department versus the protection of the land owners hinge  not on the Department's having taken possession  but on its having paid compensation to, or for the benefit of, the land owners.
¶ 13 Rogers v. Oklahoma City, 1942 OK 11, 120 P.2d 997 involved a taking for purposes of a public park. At the time of the taking, the land owner was not compensated for the disturbance of property rights. The land was sold and the Rogers Court was asked to determine which of the two property owners would be entitled to damages. It held that a city could obtain title to real property through one action pursuant to art. 2, § 24  the actual physical control of the property.
¶ 14 However, Rogers was specifically overruled in Allen v. Transok Pipe Line Co., 1976 OK 53, 552 P.2d 375. The Court in Allen recognized that Rogers was contrary to art. 2, § 24's provision requiring payment of compensation before a taking can occur in a condemnation proceeding. In overruling Rogers, the Court relied on Stinchcomb v. Oklahoma City, 1921 OK 154, 198 P. 508. In Stinchcomb, the Court determined that failure to instruct the jury that damages are fixed when compensation is paid constituted a substantial violation of the landowners' rights under the Okla. Const. art. 2, § 24. Further, under Stinchcomb, the legal taking occurs when compensation, as fixed by the commissioners, is paid to the owner of the property or into court for the owner's benefit.[13]
¶ 15 In Oklahoma, the clearly established policy in condemnation actions is to allow the condemnee to be compensated for the taking as soon as possible after the taking occurs.[14] It is important for the land owner and the condemner to understand the date from which compensation is to be measured. A condemnee's damages are judged by the conditions existing when the property is taken.[15] The Oklahoma Constitution art. 2, § 24,[16] statutory provisions governing condemnation proceedings[17] and this Court's jurisprudence,[18] all support a determination that the "date of taking" is established when the condemner pays the commissioners' award into court.

CONCLUSION
¶ 16 The land owners' contentions that fixing the date of taking at the time the Department paid the commissioners' award into court works an injustice is unconvincing.[19] *1189 Here, it is asserted that the value of the property has escalated since the payment. Therefore, the land owners lobby for a valuation of the property later in time than their receipt of the commissioners' award. In the next case, property values might have depreciated after the payment of monies and the land owner would most certainly argue for setting the date of taking at the receipt of the award.
¶ 17 When the rule is fixed at a date certain  the payment of the commissioners' award either into court or to the condemnees, there will be times when the rule works to the advantage of the condemning party and times when it benefits the property owner. The constitutional rights established under the Okla. Const. art. 2, § 24[20] are as much the right of one party as they are of the other.[21] We hold that the "date of taking" was established when the condemner paid the commissioners' award into court. The writ of mandamus is granted and the respondent is directed to vacate the order finding that taking could be established only when two conditions were met: 1) payment of the commissioners' award into court or to the land owners; and 2) the condemner taking actual physical control of the property.
ORIGINAL JURISDICTION ASSUMED; WRIT OF MANDAMUS ISSUED.
WINCHESTER, V.C.J., LAVENDER, HARGRAVE, OPALA, EDMONDSON, TAYLOR, and COLBERT, JJ., CONCUR.
KAUGER, J., CONCURS IN RESULT.
NOTES
[1] Generally, a discretionary writ of mandamus issues to compel the performance of an act by a respondent when a petitioner: has a clear legal right to have the act performed; the act arises from a duty of the respondent arising from an office, trust, or station; the act does not involve the exercise of discretion; the respondent has refused to perform the act; and the writ will provide adequate relief and no other adequate remedy at law exists. City of Tulsa v. State ex rel. Oklahoma Tax Comm'n, 2001 OK 23, ¶ 3, 20 P.3d 144; Oklahoma Gas & Elec. Co. v. District Court, 1989 OK 158, ¶¶ 8-9, 784 P.2d 61; State ex rel. Indep. School Dist. No. 1 v. Barnes, 1988 OK 70, ¶ 18, 762 P.2d 921. We have previously determined that: 1) condemnation proceedings are of sufficient public nature to support assuming original jurisdiction; and 2) under the appropriate circumstances, a writ of mandamus will issue. Oklahoma City v. Morris, 1965 OK 104, ¶ 6, 405 P.2d 1; State ex rel. Dabney v. Johnson, 1927 OK 51, ¶ 12, 254 P. 61.
[2] The Okla. Const. art. 2, § 24 provides in pertinent part:

"Private property shall not be taken or damaged for public use without just compensation.... Any party aggrieved shall have the right of appeal, without bond, and trial by jury in a court of record. Until the compensation shall be paid to the owner, or into court for the owner, the property shall not be disturbed, or the proprietary rights of the owner be divested. When possession is taken of property condemned for any public use, the owner shall be entitled to the immediate receipt of the compensation awarded, without prejudice to the right of either party to prosecute further proceedings for the judicial determination of the sufficiency or insufficiency of such compensation...."
[3] Title 69 O.S.2001 § 1203(d) provides:

"Immediately upon payment to the clerk of the court for the use of the owner the sum so assessed and reported to the court clerk aforesaid, the Department shall thereby be authorized to enter upon the condemned premises, and remove and dispose of any obstructions thereon, by sale or otherwise. If the landowner shall refuse to deliver up possession to the Department, the court shall issue an order to the sheriff of the county to place the Department in possession thereof."
[4] City of Tulsa v. Horwitz, 1928 OK 350, ¶ 0, 267 P. 852; Stinchcomb v. Oklahoma City, 1921 OK 154, ¶ 17, 198 P. 508; State ex rel. Oklahoma Capitol Improvement Auth. v. United States Beef Corp., 2002 OK CIV APP 81, ¶ 6, 52 P.3d 1052; No. 70-273, Opinions of the Oklahoma A.G. (Sept. 4, 1970). See also, Eberle v. State ex rel. Dept. of Highways, note 13, infra; Grand River Dam Auth. v. Grand-Hydro, note 13, infra; Wilkerson v. Grand River Dam Auth., note 13, infra. The existence of controlling Oklahoma law makes examining the rule in other jurisdictions unnecessary. Wrightsman v. Southwestern Natural Gas Co., 1935 OK 724, ¶ 16, 46 P.2d 925 [Because the procedures relating to condemnation are governed by state statute as supplemented by judicial interpretation, decisions of courts in foreign jurisdictions are of little value in guiding this Court.].
[5] Section 1203 of title 69 was amended effective July 1, 2001. Because the language of the amended statute is virtually identical to the 1991 version, citations will be to the amended version.
[6] Carter v. City of Oklahoma City, 1993 OK 134, ¶¶ 14-15, 862 P.2d 77; Henthorn v. Oklahoma City, 1969 OK 76, ¶ 14, 453 P.2d 1013.
[7] Carter v. City of Oklahoma City, see note 6, supra.
[8] We need not address whether the Department's actions have been sufficient to constitute possession of the condemned property. It appears the Department has established some presence on the property through the removal of obstructions either in the form of signs or debris. Should the issue of abandonment arise, actual physical possession may be important in determining the land owners' right of compensation. See, State ex rel. Dept. of Highways v. Waters, 1962 OK 220, ¶ 8, 376 P.2d 288; Oklahoma Turnpike Auth. v. Dye, 1953 OK 109, ¶ 14, 256 P.2d 438; Board of Comm'rs of Pontotoc County v. Rayburn, 1943 OK 233, ¶ 0, 138 P.2d 820. Furthermore, in determining the meaning of the constitutional provision at issue, this Court will not apply a strained constitutional interpretation. Rather, we will give the words of the provision their plain, natural and ordinary meaning. Pawnee County Excise Bd. v. Kurn, 1940 OK 202 ¶ 13, 101 P.2d 614.
[9] City of Tahlequah v. Lake Region Elec., 2002 OK 2, ¶ 7, 47 P.3d 467.
[10] Title 69 O.S.2001 § 1203(d), see note 3, supra.
[11] Title 69 O.S.2001 § 1203(e)(1) provides in pertinent part:

"The report of commissioners may be reviewed by the district court, on written exceptions filed by either party in the clerk's office within thirty (30) days after their filing of such report, and the court, after hearing had, shall make such order therein as right and justice may require, either by confirmation, rejection or by ordering a new appraisement on good cause shown. Provided, that in the event a new appraisement is ordered, the Department shall have the continuing right of possession obtained under the first appraisal, unless and until its right to condemn has finally been determined otherwise; or either party may within sixty (60) days after the filing of such report file with the clerk a written demand for a trial by jury, in which case the amount of damages shall be assessed by a jury, and the trial shall be conducted and judgment entered in the same manner as civil actions in the district court...."
[12] Title 69 O.S.2001 § 1203(f) provides in pertinent part:

"Either party aggrieved may appeal to the Supreme Court from the decision of the district court on exceptions to the report of commissioners, or jury trial; but such review or appeal shall not delay the prosecution of the work on such highway over the premises in question if the award of commissioners, or jury, as the case may be, has been deposited with the clerk or such owner..."
[13] City of Tulsa v. Horwitz, see note 4, supra; Stinchcomb v. Oklahoma City, see note 4, supra; State ex rel. Oklahoma Capitol Improvement Auth. v. United States Beef Corp., see note 4, supra; No. 72-273, Opinions of the A.G., see note 4, supra. See also, Eberle v. State ex rel. Dept. of Highways, 1963 OK 224, ¶ 5, 385 P.2d 868 [Parties stipulated to date of taking  same date as when compensation was paid.]; Grand River Dam Auth. v. Grand-Hydro, 1947 OK 167, ¶ 24, 201 P.2d 225, cert. granted, 333 U.S. 852, 68 S.Ct. 729, 92 L.Ed. 1133 (1948), aff'd, 335 U.S. 359, 69 S.Ct. 114, 93 L.Ed. 64 (1948), rehearing denied, 335 U.S. 900, 69 S.Ct. 298, 93 L.Ed. 435 (1948) [Date monies paid into court recognized as date of taking.]; Wilkerson v. Grand River Dam Auth., 1945 OK 83, ¶ 9, 161 P.2d 745 [Recognizing that when commissioners' award was paid into court taking occurred.].
[14] McMillian v. Holcomb, 1995 OK 117, ¶ 4, 907 P.2d 1034; Dyco Petroleum Corp. v. Smith, 1989 OK 51, ¶ 14, 771 P.2d 1006.
[15] Oklahoma Turnpike Auth. v. Burk, 1966 OK 113, ¶ 13, 415 P.2d 1001; Stinchcomb v. Oklahoma City, see note 4, supra. See also, Graham v. City of Duncan, 1960 OK 149, ¶ 21, 354 P.2d 458 [Where crop was destroyed during taking, issue of value of crop was evaluated at time of trial.].
[16] The Okla. Const. art. 2, § 24, see note 2, supra.
[17] Title 69 O.S.2001 § 1203(d), see note 3, supra.
[18] City of Tulsa v. Horwitz, see note 4, supra; Stinchcomb v. Oklahoma City, see note 4, supra; State ex rel. Oklahoma Capitol Improvement Auth. v. United States Beef Corp., see note 4, supra; No. 70-273, Opinions of the A.G. of Oklahoma, see note 4, supra. See also, Eberle v. State ex rel. Dept. of Highways, note 13, supra; Grand River Dam Auth. v. Grand-Hydro, note 13, supra; Wilkerson v. Grand River Dam Auth., note 13, supra.
[19] Likewise, the land owners' argument that the government's right of abandonment might leave them in a position where they would suffer economic harm is not persuasive. We have previously determined that abandonment after possession cannot occur without financial consequences such as payment of the compensation for the taking. Eberle v. State, see note 4 at ¶ 9, supra. See also, State ex rel. Dept. of Transportation v. United States Beef Corp., note 4 at ¶ 15, supra.
[20] The Okla. Const. art. 2, § 24, see note 2, supra.
[21] Stinchcomb v. Oklahoma City, see note 4, supra.