GRAND-HYDRO v. GRAND RIVER DAM AUTHORITY.

No. 30447. April 27, 1943.

Rehearing Denied June 29, 1943.
Application for Leave to File Second Petition for Rehearing Denied
Aug. 3, 1943.

*139 P. 2d 798.*

Harve N. Langley and R. A. Wilkerson, both of Pryor, S. F. Fowler, of Knoxville, Tenn., and R. D. Hudson, of Tulsa, for plaintiff in error.

Edw. P. Marshall, of Tulsa, J. B. Dudley, of Oklahoma City, and R. L. Davidson, of Tulsa, for defendant in error.

GIBSON, V. C. J. This is an appeal by the condemnee from the judgment of the district court of Mayes county rendered on a verdict in condemnation proceedings.

The proceedings were instituted by Grand River Dam Authority, a corporate instrumentality of the state, against Grand-Hydro, a corporation, to condemn some 1,400 acres of land located in the Grand River valley. The commissioners appointed by the court awarded Grand-Hydro the sum of $281,802.74, whereupon said corporation filed its objections thereto and demanded a jury trial. Thereafter said Authority also filed its objections, and demanded a jury. The trial resulted in a verdict fixing the damages at $136,250, and Grand Hydro appeals from the ensuing judgment.

Grand River Dam Authority was created by S. B. No. 395, S. L. 1935 (now 82 O. S. 1941, §§ 861-881, as later amended), and was the corporate name applied to a conservation and reclamation district thereby created, and comprising certain designated counties, including the county of Mayes. Said Authority, as "a governmental agency, body politic and corporate," was endowed with the power, among numerous others, to develop water power and electric energy within the boundaries of said district and on the Grand River, including the power of eminent domain.

Grand-Hydro was incorporated in 1929 under the laws of this state for the purpose of developing and selling hydro-electric energy and water for irrigation on Grand River. Pursuant to its corporate powers it acquired title to the lands here involved and which include the land selected by the Authority as a dam site for the erection of its power project. In 1931 said corporation applied for and obtained from the State Conservation Commission a license and permit to appropriate the waters of Grand River for beneficial use, including the construction of a dam and the development of hydro-electric power for sale, pursuant to chapter 40, R. L. 1910 (82 O. S. 1941 §§ 1-83), and chapter 70, S. L. 1927 (82 O. S. 1941 §§ 451-510, as subsequently amended).

The Authority claims the right to use the stream in the development of electric power, etc., under article 4, ch. 70, S. L. 1935, as amended by articles 1 and 2, ch. 70, S. L. 1937 (82 O. S. 1941 §§ 861-881).

The principal controversy on appeal involves the action of the trial court in striking the testimony of certain expert witnesses relating to the value of a portion of the premises, a tract of 417 acres, from the standpoint of its special adaptability to dam-site purposes. The trial court withdrew the evidence from the jury on the ground that the adaptability of the tract to such purpose was not a proper element for consideration in estimating the market value thereof.

Grand-Hydro says the trial court erred in striking the testimony, and erred in its admonition to the jury not to consider the same, and erred in refusing certain requested instructions pertaining to the right to have such testimony considered. And it is insisted that this action of the court resulted in depriving the condemnee of its property without due process of law, and without just compensation.

The measure of compensation in such case is the fair market or cash value of the land condemned. City of Tulsa v. Creekmore, 167 Okla. 298, 29 P. 2d 101. In that case the court, speaking of the elements to be considered in determining market values, said:

"It is the market value that is the test and not its value for some particular use to which it might be subjected, although its adaptability to this particular use may be considered as one of the factors in ascertaining the market value when they enter into and affect the cash market value of the property. Revell v. City of Muskogee, 36 Okla. 529, 129 P. 833; Public Service Co. v. Leatherbee, 311 Ill. 505, 143 N. E. 97."

And in the syllabus by the court the fair cash or market value of land taken in eminent domain is defined as follows:

"By fair market value is meant the amount of money which a purchaser willing but not obliged to buy the property would pay to an owner willing but not obliged to sell it, taking into consideration all uses to which the land was adapted and might in reason be applied."

With reference to the question of adaptability or availability for a particular use as an element in determining market value, the court held as follows:

"In determining the market value of a piece of real estate for the purposes of a taking by eminent domain, it is not merely the value of the property for the use to which it has been applied by the owner that should be taken into consideration, but the possibility of its use for all purposes, present and prospective, for which it is adapted and to which it might in reason be applied, must be considered, and its value for the use to which men of prudence and wisdom and having adequate means would devote the property if owned by them must be taken as the ultimate test."

The above case contains a reasonably clear statement of the law obtaining in this state and which must be applied here. The condemnee is ordinarily entitled to compensation measured not only by the value of the land for the use to which he has applied it, but the value thereof for all possible purposes, present and prospective, to which he or his ordinary grantee might legally apply the same.

However, it is urged that the law announced in the above case does not entirely cover the situation here presented. It is said that the rule may apply generally to all uses to which the condemnee or his grantee at a free sale may lawfully employ the land, but does not apply in those instances where, as here, the condemnee or his ordinary grantee would have no legal right to use the land for the purpose for which the condemnee now urges as an element of compensation.

We agree that the rule for the measure of compensation as announced in the Creekmore Case applies only to

those adaptable uses to which the condemnee or his ordinary grantee may lawfully place the land. United States v. Boston, C. C. & N. Y. Canal Co., 271 Fed. 877. In the opinion in that case the court said:

"We are of the opinion that, in ascertaining the market value of property taken in a condemnation proceeding, the utility or availability of the property for the special purpose of the taker cannot be shown, if the taker is the only party who can use the property for that purpose. If, however, the property has a special utility or availability, not only to the taker, but to other parties who could use the property for the particular purpose intended by the taker, then this utility or availability may be shown."

See, also, United States v. Chandler-Dunbar Water Power Co., 229 U. S. 53, 33 S. Ct. 667, 57 L. Ed. 1063, wherein it was said that the question in cases of this character "is what has the owner lost, and not what has the taker gained."

The Authority urges that as governmental instrumentality of the state it has exclusive authority to use the waters of Grand River for commercial purposes, and that Grand-Hydro possessed neither that right nor the right to construct a dam and to empound the waters for any purpose, and could not sell to anyone possessing those rights other than to the Authority, and was therefore not entitled to urge the adaptability of the land in that respect as an element of compensation.

The above contention forms the basis of the principal question in this case.

The owner of land may use the water of a natural stream flowing across the same, but he may not prevent the natural flow thereof. 60 O. S. 1941 § 60.

The statute, supra, creating the Grand River Dam Authority and defining its functions purports to be an express appropriation by the state of the waters in Grand River to be applied to the uses therein stated, and to place in its said agency exclusive authority to develop the stream in the manner therein provided. The state may control the flow of all nonnavigable streams such as the Grand River. And it may reserve to itself or grant to private parties the right to utilize such streams for power and other purposes. 67 C. J. 683 § 10.

As a basis for its argument that Grand-Hydro merely owned the land and was without right to use the waters for developing power, the Authority says the Grand-Hydro's purported license and permit issued by the Conservation Commission was void, or at least had expired by its own terms, and was no longer in force and effect.

First, it was urged that said permit was void for the reason that no judicial decree by any court had been entered determining all rights of all parties along the stream to use the waters thereof as provided by 82 O. S. 1941 §§ 12, 13, 14 (§§ 3640, 3641, 3642, R. L. 1910), and which decree, says the Authority, was a condition precedent to the authority of the commission to issue the permit. Owens v. Snider, 52 Okla. 772, 153 P. 833.

Under 82 O. S. 1941 §§ 11, 12 (§§ 3639, 3640, R. L. 1910) the state engineer was required to make hydrographic surveys of stream systems and to deliver the same to the Attorney General, whose duty it was to enter suit in court to obtain judicial determination of all rights of parties within the stream system to the use of waters of the stream. Under 82 O. S. 1941 § 21 (§ 3643, R. L. 1910) the state engineer was authorized to issue permits to applicants to appropriate the water "for beneficial use." At the time Grand-Hydro received its permit to utilize the water for power purposes, August 29, 1931, the Conservation Commission had succeeded to all the powers of the state engineer, with many more powers added. Chapter 70, S. L. 1927 (now contained, as subsequently amended, in 82 O. S. 1941 §§ 451-510).

82 O. S. 1941 § 12, supra, is a part of an act passed in 1905 relating to beneficial use of the waters in streams, and particularly to its use for irrigation. The

act now appears in 82 O. S. 1941 §§ 1-83. A similar act was passed in 1924 pertaining to drainage and irrigation (ch. 139, S. L. 1923-24). Section 3 of the latter act authorized the district courts, by certain procedure, to organize conservancy districts for the prevention of floods, for irrigation and other designated purposes. Water power was not mentioned therein. According to the title of the act, the whole purpose was state control of drainage and irrigation. The latter act was amended in certain particulars by chapter 148, S. L. 1925. In 1927 the Legislature passed a comprehensive act pertaining to drainage and irrigation and making specific provision for the development of water power and the granting of permits for the development of such power. Chapter 70, S. L. 1927. This act created the Conservation Commission and vested it with the authority theretofore held by the state engineer, and additional powers. The act does not purport to alter former acts to any appreciable degree with reference to organization of drainage and irrigation districts, so far as this case is concerned. But it gives to said commission specfic authority to grant permits for water power development. That authority is found in paragraph (7), sec. 3, of the act, and reads as follows:

"To supervise, conserve and develop the water power of the State of Oklahoma, granting permission for the development of such power, making such reasonable rules and regulations governing the development and operation and distribution of such power except as may be otherwise provided by law, and to take such steps as may be necessary to encourage the development of water power within said state, and to undertake by, and on behalf of the state the development of water power when private development may be inadequate or unsatisfactory on such terms as may be hereinafter provided by the Legislature, and to exercise such further powers and duties as may be directed hereafter by the Legislature of this state."

That section is now 82 O. S. 1941 § 482. Section 16 of the 1927 Act repealed all acts and parts of acts in conflict therewith.

Under the Act of 1905 (82 O. S. 1941 §§ 1-83) a court decree determining water rights for irrigation was a condition precedent to the issuance of a permit to irrigate. Owens v. Snider, supra. But we fail to find any statute enacted prior to 1927 giving the courts any specific authority to determine water rights as a preliminary requirement to a permit to develop water power. Paragraph (7), sec. 3, above, gives full power to the commission to grant permits for water power, free and independent of other agencies, and without regard to the boundary lines of improvement districts. This law was in full force and effect at the time Grand-Hydro procured its permit. The permit was therefore valid in its inception.

The Authority says further that even if the permit be considered as valid at the time of issuance, it nevertheless became invalid prior to the condemnation proceedings by reason of the fact that it had expired by its own terms, and as a result thereof Grand-Hydro occupied the same position with reference to condemnation as that of the ordinary landowners along the river.

The permit was issued to Grand-Hydro on August 29, 1931. It provided that the works, the dam, etc., be completed within four years from date, and one-fifth of the works within one-half that period, and to appropriate the waters to beneficial use within four years after the period for completion of the works. There was no provision in the permit declaring a forfeiture on failure to comply.

The act creating the Authority came into full force and effect on July 29, 1935, or one month before the expiration of four years from the date the license was issued. Assuming that one-fifth of the works had not been completed, Grand-Hydro still had one month and four years under its license to commence appropriating the waters to beneficial use. There was nothing in

the license to indicate that it should terminate within two years, four years, or eight years. There was no term fixed. The most that can be said of the time periods mentioned is that they were inserted in the license as a means of measuring the good faith of the licensee. The purpose of the license was to provide for a public service within eight years. It was nothing less than a franchise for that purpose, and it had not been abandoned, nor had it expired by its own limitation. And it had not been terminated by judicial decree. As said in 26 C. J. 1040, § 98:

"The grant of a franchise is a grant in perpetuity unless limited in duration by the grant itself, or as a consequence of some limitation imposed by general law, or by a limitation on the power of the authority making the grant."

And it is further said: "The ownership of a franchise will not be divested by mere implication." 26 C. J. 1042, § 107.

We do not say that the state may not have canceled the license by appropriate legal action on the ground of abandonment or of bad faith if such were the facts. This was not done, however, and so far as this case is concerned the license or permit remained in full force until the parties agreed to terminate it as hereinafter mentioned.

The state may engage in any occupation or business for public purposes such as supplying hydro-electric power. Section 31, art. 2, Const. And it exercised that power when the Legislature created the Grand River Dam Authority.

Prior to the creation of said Authority, and in February, 1934, the city of Tulsa filed an action in the district court of Mayes county pursuant to 82 O. S. 1941 §§ 1-83, supra, against Grand-Hydro and others, seeking an adjudication of the water rights of the parties to the waters of Spavinaw creek and to establish the city's prior right thereto, and a like adjudication as to the waters of the Grand River stream system and the priority right thereto of Grand-Hydro over other parties to said action. The Authority was created while that action was pending, and on application of the city of Tulsa and Grand-Hydro, the Authority was made a party.

Thereupon the Authority filed its answer and cross-petition seeking an adjudication of the rights of all parties to appropriate the waters of Grand River and its tributaries. After the Authority was made a party to said action, and prior to filing its answer and cross-petition aforesaid, Grand-Hydro and the Authority, as parties to the litigation, entered into an agreement in writing whereby Grand-Hydro, claiming under its permit and the work done pursuant thereto the prior right to appropriate the waters of said river to the uses aforesaid, granted and assigned to the Authority "all of its rights, claims, interests and privileges in, to or concerning the waters of the Grand River and its tributaries, or the appropriation thereof arising out of or by virtue of said approved application and the work done under authority thereof, or otherwise, including, but without limitation, all of its rights of priority in the appropriation of the waters of said river and its tributaries existing by virtue of its having filed with the proper authorities the first application to appropriate such waters to a beneficial use." But said agreement also contained the following provision:

"It is understood, however, that this assignment and conveyance shall not in any way affect or impair the title of Grand-Hydro to any lands owned by it or any interests therein, and if any lands or interests therein owned by the said Grand-Hydro are acquired by the Grand River Dam Authority by purchase or condemnation, the value thereof or damage thereto, shall be ascertained and determined as though this assignment and conveyance had never been made."

The Authority then filed its answer and cross-petition in said action as above related, setting up the permit of Grand-Hydro and alleging that by virtue of the assignment above men-

tioned the Authority had become possessed of all the rights, claims, interest, and privileges in and to or concerning the waters of Grand River theretofore held by Grand-Hydro by virtue of its permit issued by the Conservation Commission. And the trial court held in that case that the Authority had succeeded by virtue of said assignment to all rights Grand-Hydro may have held under its permit to appropriate the waters of the river. And the court rendered judgment giving the Authority prior right to control and appropriate said waters, and that Grand-Hydro had no right therein. That judgment became final.

Counsel for the Authority take the position that the judgment in the former case foreclosed any and all claims Grand-Hydro may have had to compensation other than for the value of the land for ordinary purposes, not including any value growing out of its special adaptability for dam-site purposes.

But, by the agreement aforesaid, Grand-Hydro and the Authority specifically excluded from the issues in that case any question pertaining to the rights and claims of Grand-Hydro growing out of its permit, except insofar as the agreement released or renounced or transferred those rights to the Authority. The question of compensation for every claim, whether by purchase or by condemnation, was specifically reserved by that portion of the agreement quoted above.

The court's decree in the City of Tulsa Case contains the following:

". . . Thereupon, the court . . . finds and adjudges:

"2. That on the 14th day of July, 1931, the defendant, Grand-Hydro, a domestic corporation, filed with the Conservation Commission of Oklahoma its application in due form for a permit to appropriate 4,000 cubic feet per second of the flow of Grand River for the purpose of generating electric energy and power; that the Commission fixed a day certain for the hearing of said application, and directed that notice of said hearing be given as provided by law; that said notice was duly given, and on the 29th day of August, 1931, the said Commission issued to the Grand-Hydro a permit to appropriate to a beneficial use (the generation of electric energy and power) 4,000 cubic feet per second of the flow of Grand River; that under the authority of said approved application, Grand-Hydro proceeded with diligence to acquire one or more dam sites for the purpose of constructing a dam to impound the waters of Grand River for use in the generation of electric power and energy, and in making extensive engineering investigations and surveys, and in the acquisition of lands in the basin area of the reservoir which would be inundated by the impounding waters, but the court finds and adjudges that the Grand-Hydro did not construct any works or facilities through which to utilize the waters of said river for the purpose of generating electric energy or for any other beneficial use, and did not actually apply and has never actually applied or appropriated any of the waters of said river to a beneficial use, and does not now have any right to apply or appropriate any of the waters of said river to any beneficial use, but that if Grand-Hydro acquired any rights under its approved application, it has transferred and conveyed the same to the Grand River Dam Authority by virtue of its assignment of January 10, 1938."

It is true that the Authority alleged in that case that Grand-Hydro's permit was issued prematurely by the commission for the reason that no adjudication of priority rights of interested parties had theretofore been made by the proper court, and was therefore invalid. But, as we have said above, such adjudication of priority rights was not essential to a permit to develop hydroelectric power.

The Authority also alleged:

"This answering defendant further alleges that the defendant, Grand-Hydro, an Oklahoma corporation, chartered and organized for the purpose of engaging in the business of generating hydro-electric power and energy and the distribution thereof in Oklahoma, filed in the office of the Conservation

Commission of the State of Oklahoma (now the Planning & Resources Board of the State of Oklahoma) on July 14, 1931, its application in due form to construct on Grand River in Oklahoma, a dam and hydro-electric power plant and to appropriate all of the waters of Grand River for the beneficial purpose of generating hydro-electric power and energy; that pursuant to said application, due and proper hydrographic survey was made and notice was issued and given in the manner prescribed by statute, and on the 29th day of August, 1931, upon due consideration of said application, the hydrographic survey and the evidence introduced, the said Conservation Commission approved said application and endorsed its approval on the back thereof; that on the 10th day of May, 1934, the said Grand-Hydro filed in this cause its answer and cross-petition setting up these facts, and claimed a prior right to appropriate the waters of Grand River to a beneficial use by virtue of having filed the first application, under the statutes of Oklahoma; that on the 10th day of January, 1938, the said defendant, Grand-Hydro, executed and delivered to this answering defendant all of its rights, claims, interests and privileges in, to, or concerning the waters of Grand River and its tributaries or the appropriation thereof arising out of or by virtue of said approved application and the work done under authority thereof, including, but without limitation, all of its right of priority in the appropriation of the waters of said river and its tributaries, existing by virtue of its having filed with the proper authorities the first application to appropriate such waters to a beneficial use. A true and correct copy of said assignment is attached hereto and made a part hereof and marked for identification, 'GRDA Exhibit No. 1.'

"This answering defendant further alleges that the Conservation Commission of the State of Oklahoma, on the 29th day of August, 1931, in approving the application of Grand-Hydro for the appropriation of 4,000 cubic feet per second of the average annual flow of Grand River, for the purpose of generating electric energy, adjudged and declared that 'Grand-Hydro is prior in time and is the first applicant and appropriator of the waters of Grand River for beneficial purposes'; that under the authority of said approved application, the Grand-Hydro made extensive engineering investigations and surveys on said river, including churn and core drilling, for the purpose of testing dam site foundations, and that the Conservation Commission of the State of Oklahoma on the hearing of the Grand-Hydro application, found and adjudged that the Grand-Hydro was financially able to construct the work proposed in its application and had acted diligently and in good faith, and that there had been no prior appropriation of the waters of said river to any beneficial use, and that the application of Grand-Hydro was prior in point of time to all others; and this answering defendant further alleges that by virtue of said assignment from Grand-Hydro to the Grand River Dam Authority, of January 10, 1938, the Grand River Dam Authority is now possessed with all the rights, claims, interests and privileges of Grand-Hydro in and to or concerning the waters of Grand River and its tributaries and the appropriation thereof arising out of or by virtue of said approved application and the work done under authority thereof, including, but without limitation, all of its rights of priority in the appropriation of the waters of said river and its tributaries, existing by virtue of it having filed with the proper authorities the first application to appropriate such waters to a beneficial use."

It is apparent from a reading of the Grand River Dam Authority's answer and cross-petition and the court's decree in the City of Tulsa Case that the Authority sought and obtained an adjudication that it was the holder and owner, by assignment, of all the rights and privileges Grand-Hydro had obtained under its permit.

The Authority was bound by the agreement which was entered into in furtherance of the settlement, or of defining issues involved in litigation. For, as said in Grand River Dam Authority v. Grand-Hydro, 188 Okla. 506, 111 P 2d 488, "its transactions are akin to those of private enterprises, and the mere fact that it is an agency of the government does not extend to it the

immunity of the sovereign." Aud further, "The Authority cannot exercise the powers as conferred upon it, avail itself of judicial process and, in the absence of legislation relieving it, escape the usual incidents of litigation that fall upon private litigants." Id.

When the present proceedings in condemnation were commenced Grand-Hydro stood in the same position with reference to compensation as it occupied at the time the former action was filed. At that time it held a valid and subsisting franchise from the state to erect dams for the purpose of generating hydro-electric power for public consumption. It released that right to the state by the aforesaid agreement, but reserved the right to full compensation for all privileges it was releasing. Those privileges were compensable as uses to which its lands were reasonably adaptable. A portion of those lands was adaptable to dam-site purposes for the generation of hydro-electric power.

We are aware of but one statute touching upon the measure of damages where the state takes over the projects of licensees such as the Grand-Hydro. That is the Act of 1927, supra, section 12 thereof (82 O. S. 1941 § 484). That section provides that the Legislature by enactment may revoke a license such as that held by Grand-Hydro and take over and operate the project after reimbursing the licensee as therein provided. But no such action may be taken by the Legislature until at least ten years after completion of the works. Here, there had been no such completion, and therefore the statute, with reference to reimbursement or compensation, does not apply.

Grand-Hydro pursued the proper course for determining the market value of the land. It produced witnesses qualified to give their opinions as to that value from the standpoint of the adaptability of the land to every use to which Grand-Hydro might reasonably employ the same. Among those uses was that of dam construction for the development of hydro-electric power for public use. Grand-Hydro produced qualified witnesses who gave their opinion as to the market value of the land for the latter purpose, but their testimony was withdrawn by the court and the jury admonished not to consider the same. The ground assigned for such procedure was that the adaptability of the land to dam-site purposes was not an element of market value. In this the court erred.

The judgment is reversed and the cause remanded, with directions to set aside the verdict and to allow the parties thereupon to renew their motions for jury trial, and to take such other action as will conform to the views herein expressed.

CORN, C. J., and OSBORN, BAYLESS, WELCH, and DAVISON, JJ., concur. ARNOLD, J., concurs in conclusion. RILEY and HURST, JJ., dissent.