JOHN F. FISCHER, Presiding Judge.
 

 1 1 Wagoner County Rural Water District No. 2, Wagoner County Rural Water District No. 7, Wagoner County Rural Water District No. 9, Cherokee County Rural Water District No. 11, Peggs Water Company and TriB Nursery, Inc., (Water Districts), appeal from an order of the district court dismissing their First Amended Petition. The appeal has been assigned to the accelerated docket pursuant to Oklahoma Supreme Court Rule 1.86(b), 12 0.8. Supp.2008, ch. 15, app. 1, and the matter stands submitted without appellate briefing. Based on our review of the record and applicable law, we affirm.
 

 BACKGROUND
 

 12 Each of the Water District plaintiffs is required to pay the Grand River Dam Authority for water. The Water Districts filed suit alleging that the GRDA does not have any rights to the water for which they are being charged. The GRDA moved to dismiss pursuant to 12 O.S. Supp.2004 § 2012(B)(6), arguing that the Water Districts' petition failed to state a claim on which relief could be granted.
 
 [1]
 
 The district court's order
 
 *1130
 
 granting the GRDA's motion to dismiss is the subject of the Water Districts' appeal.
 

 STANDARD OF REVIEW
 

 %3 Appellate review of GRDA's motion to dismiss is governed by the standard set forth in National Diversified Business Services, Inc. v. Corporate Financial Opportunities, Inc., 1997 OK 36, ¶9, 946 P.2d 662, 665-66:
 

 A motion to dismiss for failure to state a claim upon which relief can be granted may not be sustained unless it should appear without doubt that the plaintiff can prove no set of facts in support of the stated claim for relief.
 

 Id. at ¶ 9, 946 P.2d at 665 (footnotes omitted). Where, as here, evidentiary materials are attached to a section 2012(B)(6) motion or response, a court must convert the motion into one for summary judgment. Id., 946 P.2d at 665-66.
 

 A motion for summary disposition submits the controversy to the court for application of the pertinent law to uncontroverted facts. The tendered evidentiary materials will warrant summary relief if all material facts are undisputed and supportive of but a single inference that favors the movant.
 

 Id., 946 P.2d at 666. A district court's order granting a motion for summary judgment resolves only a question of law. Id. at n. 18, 946 P.2d at 666 n. 18. Accordingly, we will review de novo the district court's order, dismissing this case for failure to state a claim on which could be granted. Id. at 19, 946 P.2d at 666. See also Carmichael v. Beller, 1996 OK 48, ¶2, 914 P.2d 1051, 1053.
 

 ANALYSIS
 

 T4 The dispositive issue in this appeal requires a determination of the ownership of the water sold by the GRDA to the Water Districts. If the GRDA owns the right to sell the water at issue, then the Water Districts cannot state any cognizable legal theory to support their claim, and the district court properly dismissed their petition.
 

 T5 The material facts in this case are not in dispute. The four water districts were organized pursuant to the Rural Water, Sewer, Gas and Solid Waste Management Districts Act, 82 00.98.2001 §§ 1824.1-1824.35. Peggs Water Company and Tri-B Nursery, Inc., are Oklahoma corporations. The four rural water districts and Tri-B Nursery appropriate water from Fort Gibson Reservoir or its tributaries. Peggs appropriates subsurface water from a well located on its property. All of the water taken by the Water Districts comes from within the conservation and reclamation district (the Grand River water district) established by the State of Oklahoma to preserve, protect and distribute the waters of the Grand River. The Grand River is a non-navigable water. The Arkansas river, into which the Grand River flows, is a navigable stream.
 

 The GRDA was created in 1985.
 

 There is hereby created within the State of Oklahoma a conservation and reclamation district to be known as "Grand River Dam Authority", hereinafter called the district, and consisting of that part of the State of Oklahoma which is included within the boundaries of the Counties of Adair, Cherokee, Craig, Delaware, Mayes, Muskogee, Ottawa, Osage, Pawnee, Payne, Lincoln, Logan, Tulsa, Wagoner, Sequoyah, Has-kell, Latimer, Pittsburg, McIntosh, Creek, Okmulgee, Nowata, Washington and Rogers. Such district shall be, and is hereby declared to be, a governmental agency of the State of Oklahoma, body politic and corporate, with powers of government and with the authority to exercise the rights, privileges and functions hereinafter specified, including the control, storing, preservation and distribution of the waters of the Grand River and its tributaries, for irrigation, power and other useful purposes and reclamation and irrigation of arid, semiarid and other lands needing irrigation, and the conservation and development of the forests, minerals, land, water and other resources and the conservation and development of hydroelectric power and other electrical energy, from whatever source derived, of the State of Oklahoma.
 

 82 0.8.2001 § 861. The GRDA is authorized to "control, store and preserve, within the boundaries of the district, the waters of Grand River and its tributaries, for any use
 
 *1131
 
 ful purpose, and to use, distribute and sell the same within the boundaries of the district." 82 0.98.2001 § 862(a). Nonetheless, the Water Districts argue that the GRDA does not "control, store and preserve" the water they are being sold. That argument is alternatively based on an interpretation of a United States Supreme Court decision and interpretation of Oklahoma statutes.
 

 I. The Federal Law Argument
 

 16 The right to water consists of two basic but not mutually exclusive interests. One is public and the other private. As to the public interest, the general rule is that the United States owns the superior right to navigable water. See eg., U.S. v. Chandler-Dunbar Water Power Co., 229 U.S. 53, 62, 88 S.Ct. 667, 671, 57 L.Ed. 1063 (1913), in which the Supreme Court held that title to real property:
 

 is subordinate to the public right of navigation, and however helpful in protecting the owner against the acts of third parties, is of no avail against the exercise of the great and absolute power of Congress over the improvement of navigable rivers. That power of use and control comes from the power to regulate commerce between the states and with foreign nations. It includes navigation and subjects every navigable river to the control of Congress.
 

 Generally, states own the superior right to non-navigable water.
 

 [Flew public interests are more obvious, indisputable, and independent of particular theory than the interest of the public of a state to maintain the rivers that are wholly within it substantially undiminished, except by such drafts upon them as the guardian of the public welfare may permit for the purpose of turning them to a more perfect use.
 

 Hudson County Water Co. v. McCarter, 209 U.S. 349, 356, 28 S.Ct. 529, 531, 52 L.Ed. 828 (1908).
 

 17 The private interest consists of two rights, riparian and appropriative. Franco-American Charolaise, Ltd. v. Okla. Water Res. Bd., 1990 OK 44, ¶¶ 14 and 23, 855 P.2d 568, 575-77
 
 [2]
 
 And, although these private interests are balanced by "relative reasonableness," id. at ¶ 27, 855 P.2d at 578, Oklahoma's "power to control unappropriated public waters is plenary. Definite nonnavi-gable streams are public waters. The state may either reserve to itself or grant to others its right to utilize these streams for beneficial purposes." Oklahoma Water Res. Bd. v. Cent. Okla. Master Conservancy Dist., 1968 OK 73, ¶14, 464 P.2d 748, 753. Further, "[the Legislature may exercise its police power to protect the state's water irrespective of the rights of private owners of the land most immediately concerned." Jacobs Ranch, L.L.C. v. Smith, 2006 OK 34, ¶23, 148 P.3d 842, 849-50. Pursuant to this plenary power, the Oklahoma Legislature clearly granted to the GRDA the right to "control, store and preserve, within the boundaries of the district, the waters of Grand River and its tributaries." 82 0.8.2001 § 862(a). The Water Districts, however, do not claim a superior riparian or appropriative right. They argue that the United States Supreme Court determined in 1960 that the GRDA does not own any rights to the Fort Gibson portion of the Grand River water district, the source of the water they appropriate from the Grand River water district.
 

 T8 In 1956, the GRDA sued the United States over the right to generate electric power from the Fort Gibson reservoir. The GRDA had recovered compensation when Fort Gibson dam was built for a 7O-acre
 
 *1132
 
 tract of land condemned, for the flow of the Grand River over that land, and for the costs of relocating its electric power transmission lines. The GRDA also claimed it had been deprived of its exclusive power to generate bydroelectric power within the Grand River water district. The Court of Claims found that the Government was lable for taking the GRDA's water power rights, and the Government appealed. The decision on which the Water Districts rely, United States v. Grand River Dam Auth., 363 U.S. 229, 80 S.Ct. 1134, 4 L.Ed.2d 1186 (1960), resolved the litigation. The GRDA argued that, although the federal government had the right to navigable waters, the Grand River was a non-navigable stream over which the State of Oklahoma had control. It was not disputed that Oklahoma had conferred its right to the water within the Grand River water, district, as well as the franchise right to generate electric power from that water, to the GRDA. The GRDA operates electric generating facilities at the Pensacola and Markham Ferry dams, and claimed the right to do so at Fort Gibson, the most downstream of the three dams on the Grand River. Therefore, the GRDA claimed that the federal government's operation of the electric generating facility at Fort Gibson constituted a "taking" for which the GRDA was entitled to be compensated.
 

 T9 The three dam projects on the Grand River had been incorporated into the Flood Control Act by Congress in 1941. Fort Gibson was completed as "an integral part of a comprehensive plan for the regulation of navigation, the control of floods, and the production of power on the Arkansas and its tributaries." Id. at 2830, 80 S.Ct. at 1185. Although recognizing state ownership of non-navigable waters, the Supreme Court found "no constitutional reason why Congress cannot, under the commerce power treat the watersheds as a key to flood control on navigable streams and their tributaries." Id. at 232, 80 S.Ct. at 1186. Pursuant to the Commerce Clause, U.S. Const., art. I, § 8, cl. 3, the Court found this interest "superior" to any state interest. Relying on Omnia Commercial Co. v. United States, 261 U.S. 502, 48 S.Ct. 487, 67 L.Ed. 778 (1928), for the proposition that many laws and rulings by the federal government reduce the value of property held by individuals, the Court held that the "Court of Claims erred in failing to distinguish between an appropriation of property and the frustration of an enterprise by reason of the exercise of a superior governmental power." Grand River Dam, 363 U.S. at 286, 80 S.Ct. at 1188.
 

 10 This case does not hold, as the Water Districts argue, that the GRDA failed to prove that it had any right to the water in the Fort Gibson reservoir. In fact, the Supreme Court specifically refused to reach the issue argued by the United States: the federal government's right to navigable water preempts state created property rights to non-navigable water. The case merely holds that the right of the GRDA to produce electricity from the Fort Gibson reservoir was inferior to the right of the federal government to do so.
 

 {11 As previously discussed, many and often competing interests may have legitimate claims to the same water. The fact that one interest may be superior to another does not extinguish the inferior interest; it merely establishes the priority of the superior use. Further, "the existence of unexercised federal regulatory power does not foreclose state regulation of its water resources, [or] of the uses of water within the state...." Sporhase v. Nebraska, 458 U.S. 941, 954, 102 S.Ct. 3456, 3463, 73 L.Ed.2d 1254 (1982) (invalidating a state statute restricting the use of groundwater outside the state). Mutual, complementary use of water is contemplated by Oklahoma law. Franco-American, 1990 OK 44 at ¶ 14, 855 P.2d at 575-76. It is also contemplated by federal law. In Pennsylvania v. Wheeling & Belmont Bridge Co., 59 U.S (18 How.) 421, 15 L.Ed. 485 (1855), the Supreme Court held that a bridge over the Ohio river, constructed pursuant to a Virginia statute, created an obstruction to navigation that should be removed. Before the decree was executed, Congress declared the bridge a lawful structure and the Court refused to order removal of the bridge.
 

 Although it still may be an obstruction in fact, [it] is not so in contemplation of law. We have already said, and the principle is
 
 *1133
 
 undoubted, that the act of the legislature of Virginia conferred full authority to erect and maintain the bridge, subject to the exercise of the power of Congress to regulate the navigation of the river. That body having, in the exercise of this power, regulated the navigation consistent with its preservation and continuation, the authority to maintain it would seem to be complete. That authority combines the concurrent powers of both governments, state and Federal, which, if not sufficient, certainly none can be found in our system of government.
 

 Id. at 480. Consequently, the ruling in United States v. Grand River Dam Authority cannot be extended to support the Water Districts' position that the government's right to build a flood control dam and produce electricity at Fort Gibson precludes any other complementary use of the water by the GRDA, or preempts all other rights previously granted the GRDA by the State of Oklahoma to the water in the Fort Gibson reservoir, its streams, tributaries and associated groundwater.
 

 {12 Finally, the Water Districts' reliance on 82 00.98.2001 § 105.21 does not advance their argument. That statute provides, in part:
 

 The owner of any works for the storage, diversion or carriage of water, which contain water in excess of his needs for irrigation or other beneficial use for which it has been appropriated, shall be required to deliver such surplus, at reasonable rates for storage or carriage, or both, as the case may be, to the parties entitled to the use of the water for beneficial purposes....
 

 {13 The Water Districts argue that seetion 105.21 conveys to the United States ownership of, or at least the right to sell, water in the Fort Gibson reservoir, because the federal government owns the Fort CGib-son dam. No other authority is cited for this proposition and no reported case has interpreted this statute. Nonetheless, the Water Districts' construction is irreconcilable with other provisions in the Waters and Water Rights Act. Section 105.9 requires that any "federal governmental agency ... intending to acquire the right to the beneficial use of any water shall ... before taking the same from any constructed works, make an application to the Board...." Section 105.29 requires officers of the United States "authorized by law to construct works for the utilization of waters within the state" to notify the Water Resources Board of their intent to utilize specified water within the State. The Board may approve, reduce or reject the United States' intended utilization. The fact that the United States has the right to build a dam for flood control and hydroelectric generating purposes does not establish the federal government's ownership of the water affected. As previously discussed, the fundamental right to the water of the Grand River, including that water within the Fort Gibson reservoir, belongs to the State of Oklahoma and has been transferred to the GRDA. The Water Districts therefore fail to establish that the United States has the right to sell the water at issue.
 

 II. The State Law Argument
 

 T14 The Water Districts State law argument relies on two statutes. The first, 82 0.8.2001 § 887, provides: "[The waters of Grand River in Oklahoma and the Pensacola and Markham Ferry Reservoirs, located thereon, be and are hereby determined and declared to be non-navigable and waters of the State of Oklahoma." Because this statute was enacted in 19683, thirteen years after the construction of the Fort Cib-son dam, the Water Districts conclude that the Legislature, by its omission of any reference to the Fort Gibson reservoir, intended to exclude waters below the Markham Ferry dam from the authority of the GRDA. The second statute, 82 0.9.2001 § 890, provides: "The Grand River Dam Authority shall have no control over that portion of the Grand River downstream from Fort Gibson Dam to the point of confluence of the waters of the Grand River with those of the Arkansas River." With the specific exelusion of water between the Fort Gibson dam and the Arkansas river, the Water Districts conclude that the Legislature also intended to exclude the water from which the excluded waters were derived, in their view, the Fort Gibson reservoir.
 

 
 *1134
 
 YT15 Other than these statutory citations, the Water Districts cite no authority to support their construction of these statutes. Nonetheless, principles of statutory construction are generally accepted.
 

 The determination of legislative intent controls statutory interpretation. The intent is ascertained from the whole act based on its general purpose and objective. In construing statutes, relevant provisions must be considered together whenever possible to give full foree and effect to each. To ascertain intent, we look to the language of the pertinent statute. We presume that the Legislature intends what it expresses. Except when a contrary intention plainly appears, terms are given their plain and ordinary meaning.
 

 Oklahoma Ass'n For Equitable Taxation v. City of Oklahoma City, 1995 OK 62, ¶ 5, 901 P.2d 800, 803 (footnotes omitted). With respect to the Water Districts' section 887 argument, it is true, as a general rule, that the failure to include an item evidences an intent to omit the item. "[TThe general rule is that nothing may be read into a statute which was not within the manifest intention of the legislature as gathered from the language of the act." Stemmons, Inc. v. Universal C.I.T. Credit Corp., 1956 OK 221 ¶ 19, 301 P.2d 212, 216. See also McSorley v. Herts Corp., 1994 OK 120, ¶19, 885 P.2d 1343, 1846 (legislative omission is evidence of intent not to cover the omitted subject). Nonetheless, "[when construing statutes, all relevant provisions must be considered together, where possible, so that force and meaning is given to each." Dana P. v. State, 1982 OK 140, ¶ 23, 656 P.2d 253, 258. Further, "in the construction of statutes to determine legislative intent, the entire act may be considered, together with all other enactments on the same subject, and when the intention of the Legislature can be gathered from the entire statute, words may be modified, altered, or supplied to give the statute the force and effect intended." Charlson v. State ex rel. Dep't of Pub. Safety, 2005 OK 83, ¶ 10, 125 P.3d 672, 675.
 

 116 First, the Water Districts' construction of section 890 is inconsistent with its interpretation of section 887. The water flowing out of Fort Gibson reservoir and excluded from GRDA authority pursuant to section 890 flowed into that reservoir from waters included within the Grand River water district, and waters that the Water Districts concede are specifically included within the GRDA's authority pursuant to section 887. Although the authority of the GRDA over water below the Fort Gibson dam may be limited, the non-navigable nature of that water does not change until it reaches the Arkansas River.
 

 1 17 Second, the Water Districts' construction of section 887 is unacceptably narrow. The designation of particular waters, the Pensacola and Markham Ferry reservoirs, as non-navigable does not require the conclusion that all reservoirs not designated are navigable. This is particularly true when the statute begins with the designation of the Grand River as non-navigable. The State's ownership depends on the non-navigable nature of the water, not the State's articulation of that fact.
 

 {18 Third, the Water Districts' construction of section 887 fails to reconcile the authority granted to the GRDA pursuant to sections 861 and 862:
 

 There is hereby created within the State of Oklahoma a conservation and reclamation district to be known as "Grand River Dam Authority" ... consisting of that part of the State of Oklahoma which is included within the boundaries of the Counties of Adair, Cherokee, Craig, Delaware, Mayes, Muskogee, Ottawa, Osage, Pawnee, Payne, Lincoln, Logan, Tulsa, Wagoner, Sequo-yah, Haskell, Latimer, Pittsburg, McIntosh, Creek, Okmulgee, Nowata, Washington and Rogers.
 

 Within that district, the GRDA has the right to "the control, storing, preservation and distribution of the waters of the Grand River and its tributaries." 82 0.8.2001 § 861. It is undisputed that the Fort Gibson reservoir is within the Grand River conservation and reclamation district The statute creating the GRDA and defining its functions is "an express appropriation by the state of the waters in Grand River to be applied to the uses therein stated, and to place in its said agency exclusive authority to develop the stream in the manner therein provided."
 
 *1135
 
 Grand-Hydro v. Grand River Dam Auth., 1943 OK 158, ¶18, 192 Okla. 693, 139 P.2d 798, 801. There is only one exception to the authority granted the GRDA to control the waters of the Grand River; "any municipal corporation within the area included within the jurisdiction of the said Grand River Dam Authority shall be entitled to take water from the Grand River and any of its tributaries in any quantities that may be needed by such municipal corporation." 82 0.8. Supp. 2008 § 862(a). None of the Water Districts is a municipal corporation, and we will not "read into" the statute an exception the Legislature did not create.
 

 € 19 Finally, the GRDA has been charging, and the Water Districts have been paying the GRDA, for the water at issue for a substantial period of time even before the Water Districts began their legal challenges to the GRDA's right to do so.
 

 It is a well settled rule that the contemporaneous construction of a statute by those charged with its execution and application, especially when it has long prevailed, while not controlling, is entitled to great weight and should not be disregarded or overturned except for cogent reasons, and unless it be clear that such construction is erroneous. The courts are especially reluctant to overturn a long standing executive or departmental construction where great interests have grown up under it and will be disturbed or destroyed by the announcement of a new rule, or where parties who have contracted with the government upon the faith of such construction will be prejudiced.
 

 Oral Roberts Univ. v. Oklahoma Tax Comm'n, 1985 OK 97, ¶10 714 P.2d 1013, 1015 (quoting McCain v. State Election Bd., 1930 OK 323, 116, 144 Okla. 85, 289 P. 759, 762-63). We find no reason to overturn the GRDA's construction of these statutes.
 

 CONCLUSION
 

 {20 The GRDA was created by the State of Oklahoma and vested with the right to control, store, preserve and distribute the waters of the Grand River and its tributaries. Included among those rights is the right to sell water to the Water Districts. No superi- or right held by the United States affects or supercedes the right of the GRDA to do so. Consequently, the Water Districts can state no claim entitling them to relief based on the facts alleged in their First Amended Petition. The Order of the district court dismissing that petition is affirmed.
 

 1 21 AFFIRMED.
 

 WISEMAN, C.J., and BARNES, J., concur.
 

 [1]
 

 . The GRDA also asserted 12 O.S. Supp.2004 § 2012(b)(7), failure to join an indispensable party, as a basis for its motion. That issue is not pertinent to our disposition of this appeal.
 

 [2]
 

 . Cf., Oklahoma's Waters and Water Rights Act: "It is the intent of the Oklahoma Legislature that the purpose of Section 105.1 through Section 105.32 of this title is to provide for stability and certainty in water rights by replacing the incompatible dual systems of riparian and appropria-tive water rights which governed the use of water from definite streams in Oklahoma prior to June 10, 1963, with an appropriation system of regulation requiring the beneficial use of water and providing that priority in time shall give the better right. These sections are intended to provide that riparian landowners may use water for domestic uses and store water in definite streams and that appropriations shall not interfere with such domestic uses, to recognize through administrative adjudications all uses, riparian and ap-propriative, existing prior to June 10, 1963, and to extinguish future claims to use water, except for domestic use, based only on ownership of riparian lands." 82 0.$.2001 § 105.14.