# GRAND RIVER DAM AUTHORITY v. GRAND-HYDRO.

No. 32399.   May 20, 1947.

Rehearing Denied July 1, 1947.

Dissenting Opinion Dec. 28, 1948.

Application for Leave to File Second Petition for Rehearing Denied Feb. 1, 1949.

Writ of Certiorari Denied Dec. 15, 1947. See 68 S. Ct. 263.

Judgment Affirmed Nov. 22, 1948. See 69 S. Ct. 114.

*201 P. 2d 225.*

Q. B. Boydstun and R. L. Davidson, both of Tulsa, for plaintiff in error.

Harve N. Langley and R. A. Wilkerson, both of Pryor, S. F. Fowler, of Knoxville, Tenn., and R. D. Hudson, of Tulsa, for defendant in error.

J. Edward Williams and Roger P. Marquis, both of Washington, D. C., U. S. Dept. of Justice, amicus curiae.

Mac Q. Williamson, Atty. Gen., and Fred Hansen, Asst. Atty. Gen., amicus curiae.

DAVISON, V.C.J.   This is an appeal from a judgment rendered upon a jury verdict in an action in condemnation brought by the Grand River Dam Authority, herein referred to as the Authority, as plaintiff, against Grand-Hydro, as defendant.

After commissioners were appointed and had fixed the value of defendant's property, both parties demanded a jury trial, resulting in a verdict for defendant of $136,250.   (On appeal to this court the cause was reversed and remanded.   Grand-Hydro v. Grand River Dam Authority, 192 Okla. 693, 139 P. 2d 798.)

The case was retried and judgment rendered upon the verdict of the jury, from which plaintiff brings the cause here on appeal.   Briefs amicus curiae have been filed by the State of Oklahoma and by the United States.

There is little dispute about the facts. The Grand-Hydro is a private corporation organized in 1929 and incorporated for the purpose of generating and distributing electric power.   It acquired

title to numerous tracts of land along the Grand River, including that involved in this litigation, which consists of some 1,400 acres. Included in this acreage is one 417-acre tract known as the Pensacola site, which is the site of the dam later built by the Authority.

On August 29, 1931, after a proper application therefor was filed, the Conservation Commission of Oklahoma issued to Grand-Hydro a permit to appropriate to a beneficial use 4,000 cubic feet per second of the flow of Grand River and to construct one 50-foot storage and power dam and one 14-foot equalizing dam, pursuant to which extensive engineering investigations and surveys were made by the Grand-Hydro. As pointed out in our former opinion, this permit was in effect at the time of its assignment to the Authority.

In February, 1934, the city of Tulsa, after having obtained a permit to appropriate the waters of Spavinaw creek, a tributary of Grand river, filed suit in the district court of Mayes county to adjudicate the appropriated and unappropriated waters of both streams. In that suit the Grand-Hydro was made defendant along with several cities and towns.

The State Legislature in 1935 created the Grand River Dam Authority as a governmental corporate agency, to develop and sell water power and electric energy in the Grand River basin, and endowed it with the power of eminent domain.

After being made a party to the city of Tulsa suit and before filing answer, the Authority acquired, on January 10, 1938, by assignment and deed, all of the title and interest of the Grand-Hydro in a 45-mile tract of land and in the permit and license to appropriate the waters of Grand River to a beneficial use. The Authority then, on January 18, 1938, filed its answer and cross-petition, alleging among other things the assignment and the ownership by the Authority of all the interest of Grand-Hydro in the permit and license.

About a month later judgment was rendered adjudging that the several municipalities had a prior right to divert and appropriate for municipal purposes very small amounts of the flow of Grand River and that the Authority had a prior right to the remainder of said flow.

In March, 1938, Grand-Hydro conveyed another 10 acres to the Authority and in July conveyed to it the right of entry on all lands at the Pensacola dam site and south thereof. The conveyances of the land were made on condition that the consideration would later be determined by agreement or condemnation and the assignment was on the condition provided for therein:

"It is understood, however, that this assignment and conveyance shall not, in any way, affect or impair the title of Grand-Hydro to any lands owned by it, or any interests therein, and if any lands or interest therein owned by the said Grand-Hydro are acquired by the Grand River Dam Authority by purchase or condemnation, the value thereof or damage thereto shall be ascertained as though this assignment and conveyance had never been made."

The parties being unable to agree on the value of the property, the Authority filed this action in condemnation February 17, 1939. It was stipulated by the parties that the taking date was January 19, 1940.

In July, 1939, after proper application by the Authority and after a finding that the construction proposed would affect interstate commerce because of its effect on the Arkansas River, the Federal Power Commission issued a license to the Authority to construct, maintain and operate the dam which it later built. The spillway was built on the 45-acre tract acquired by deed and the dam was built on adjacent land still owned by Grand-Hydro but covered by the right of entry. Grand-Hydro had no such federal license nor had it taken any steps toward procuring one.

In the second trial the witnesses, on behalf of the Grand-Hydro, testified

that the 417-acre tract had a value of $750,000 to $1,000,000 for dam site purpose and the balance of the land had a value of $78,375 to $83,600. The Authority introduced no testimony as to the value of the land for dam site purposes but their witnesses testified the entire 1,400 acres had a value of $34,500 to $56,656.50.

The numerous assignments of error urged by appellant will be considered in the order presented, first and foremost being whether or not the former opinion of this court constitutes the law of the case on this appeal. The conclusions therein expressed were arrived at after extensive arguments by counsel, the filing of various petitions for rehearing and detailed consideration of every question presented. Many cases are cited by each party stating the rule of law:

". . . All questions open to dispute and either expressly or by necessary implication decided on appeal to this court will not be open for review on the second appeal, but such decision becomes the settled law of the case as to all such questions, and is not subject to re-examination." St. Louis & S. F. Ry. v. Hardy 45 Okla. 423, 146 P. 38.

And the exceptions to the rule:

". . . The courts uniformly hold that an appellate court may review and reverse its former decision in the same case where it is satisfied that gross or manifest injustice has been done by its former decision, or where the mischief to be cured far outweighs any injury that may be done in the particular case by overruling a prior decision." Wade v. Hope & Killingsworth, 89 Okla. 64, 213 P. 549.

Although a few courts hold that there is no exception to the general rule, we have consistently held that, if the facts of the particular case warrant, the exception should apply. But, as heretofore stated, the opinion on the first appeal was rendered only after exhaustive study and is the law of this case on all questions therein decided.

On the first appeal we held that the permit of the Grand-Hydro was not in-

valid ab initio, nor had it expired by its own terms, nor had it been abandoned, nor did the city of Tulsa case so hold.

The doctrine of "the law of the case" is not controlling "where the facts and issues are different in a subsequent appeal from what they were in the former appeal." Missouri, K. & T. Ry. Co. v. Tulsa, 113 Okla. 21, 238 P. 452 at 456. In this appeal the new or different facts and issues presented consist of the competency of the testimony, as presented in the last trial, of the expert witnesses as to the market value of the dam site; the submission of such testimony to the jury under proper instructions; the effect of Grand-Hydro's lack of a permit from the Federal Power Commission; the trial court's refusal to allow counsel to argue to the jury that the condemned land had no dam site value because of such fact; and the allowance of interest.

When the very able argument of the plaintiff in error, on all points except that relating to interest, is summarized and condensed, it can be stated as one proposition: that, by reason of the legislative act creating the Authority, and the issuance of a permit to it by the Federal Power Commission, the value of the land as a dam site was for the special purpose of the taker, the only party who can use it for that purpose. Many authorities are cited to the effect that if the taker is the only one who can use the land for a particular purpose, its value therefor is not an element in fixing the market value. Paramount among the authorities cited are Eichman v. The City of Oklahoma City, 84 Okla. 20, 202 P. 184, and United States v. Boston C.C. & N.Y. Canal Co., 271 Fed. 877. In all of the cases relied upon, the taker, inherently was the only one who could use the property for the specific purpose, usually a governmental function, or the condemnee did not have the power of eminent domain necessary to acquire all the lands needed to use the tract for such purpose.

In the case at bar the condemnor was, by legislative act, exclusively author-

ized to use the Grand River for hydro-electric power, but the use was in the nature of a business enterprise and the condemnee was also possessed of the power of eminent domain.

Appellant contends that the passage of the act creating the Authority was, in effect, a forfeiture of the Grand-Hydro permit and therefore it was not entitled to recover the dam site value of the lands condemned. If such was the intent of the Legislature in passing the act, it was in violation of the Constitution, art. 2, sec. 24. The state cannot, through its law-making body, remove the principal value of private property and, through its established agency acquire the property by condemnation, basing the reimbursement to the owner on the reduced value. If it were otherwise, it would be possible to circumvent the above section of our Constitution. The value of the right to appropriate water which constitutes one element in fixing the value of land as a dam site was discussed in our former opinion.

The parties themselves realized that the suitability of the land as a dam site was the principal element of value. Otherwise, there would have been no reason for the above-quoted proviso in the assignment of the license and permit. This is further borne out by the stand taken by the Authority in the City of Tulsa case in which the Authority's answer and cross-petitions set up the assignment as a basis of ownership of all of the Grand-Hydro's right to appropriate the river flow. The judgment in that case sustained that position.

The testimony of the expert witnesses as introduced was, therefore, competent to prove the dam site value of the property and was in accord with our opinion on the former appeal. To the same effect is the California case of Metropolitan Water Dist. of Southern California v. Adams et al. (Cal.) 116 P. 2d 7, wherein there is an extensive discussion of many of the points herein involved and a collection of many authorities on the subject.

Although the Authority had been granted a license by the Federal Power Commission granting it the exclusive right to use the 417-acre tract as a dam site, it could not thereby take private property without just compensation. Nor was the issuance of such license intended to have that effect because the plain provision requires the licensee to pay all damages to the property of others caused by the construction, operation and maintenance of the project. In addition, the Federal Power Commission based its authority to take jurisdiction upon a finding of fact that the construction and operation of the project "as proposed by the declarant will affect navigable stages of the Arkansas River, a navigable water of the United States, to which said Grand River is tributary." The commission would have no authority whatever if the dam site were used for the construction of such a dam that the navigability of the Arkansas River would not be affected.

The trial court, therefore, was correct in refusing to allow counsel to argue to the jury the proposition that the lands had no dam site value because of the provisions of the legislative act creating the Authority and the issuance to it of the license by the Federal Power Commission. The instructions to the jury fully cover all issue submitted and are in harmony with our opinion herein and in the first appeal.

On January 19, 1940, the date of the taking, the Authority paid into court the amount found by the commissioners to be the value of the property, $281,802.74. The jury fixed the value at $800,000 and the judgment of the court allowed interest on $518,197.26, the difference between these two amounts, from said date of taking. The question of interest in this type of case must be reserved by the court, as in St. Louis, E. R. & W. R. Co. v. Oliver, 17 Okla. 589, 87 P. 423, or it must be apparent that the jury omitted it, in

order for the court to allow the same. Blackwell, E. & S. W. R. Co. v. Bebout, 19 Okla. 63, 91 P., 877. Herein, the trial court instructed the jury to fix the market value of the lands as of the date of taking. Therefore, it was proper to allow interest from that date.

Finding no error, the judgment is affirmed.

OSBORN, BAYLESS, WELCH, CORN, GIBSON, and ARNOLD, JJ., concur. HURST, C.J., and RILEY, J., dissent.

———

HURST, C.J. (dissenting). I think the judgment which is sustained in this case is grossly excessive and that a re-mittitur should be ordered. The excessiveness of the judgment arises by reason of the fact that the jury and trial court acted on the assumption that at the time the lands were appropriated on January 19, 1940, Grand-Hydro had the right to use the waters of Grand River for hydroelectric purposes and that dam site value was an element entering into the measure of recovery.

In order to fully understand this case, it is necessary to consider the facts and history of the case and the pertinent legislation.

In 1905, the Territorial Legislature enacted a statute with reference to the beneficial use of waters of the territory. S. L. 1905, p. 274. This statute was carried forward into the 1910 Revised Laws as chapter 40, and is now found in the 82 O.S. 1941 §§1-104. Our continued reference to that law will be to the 1905 Act. The error in the majority opinion and the first opinion is in assuming that the 1905 Act relates only to irrigation and that it does not relate to the use of waters for hydroelectric purposes. The 1905 Act prescribed the procedure for acquiring rights to waters for **beneficial use.** In 1927, the Legislature enacted the Conservancy Act, creating the Conservation Commission and transferring to that Board the powers and duties for-merly belonging to the State Engineer. This act did not set out the procedure for acquiring rights to waters for beneficial uses and did not purport to repeal the 1905 Act, except where the 1905 Act was in conflict with it. That act was chapter 70 of the 1927 Session Laws, and the portions still in effect are found in 82 O.S. 1941 §§481-485.

On August 29, 1931, the Conservation Commission issued to Grand-Hydro a permit to construct dams in the vicinity of the Pensacola Dam for the use of the waters for hydro-electric purposes. The permit contained these provisions:

"That Grand-Hydro complete the works within four years from this date and one-fifth of the works within one-half of such period of time and appropriate the waters to beneficial use within four years after the date fixed for the completion of the works.

"That this order is made subject to and bound by all pertinent provisions of Chapter 40, Revised Laws of 1910 as amended, Chapter 70 of the Acts passed by the Regular Session of the Eleventh Legislature of the State of Oklahoma (Session Laws of Oklahoma, 1927), as amended, and the rules and regulations of the Commission, the State reserving all rights and privileges not inconsistent with this grant."

The application filed by Grand-Hydro and on which this permit was issued contained these identical provisions.

In February, 1934, the city of Tulsa commenced cause No. 5263 in the district court of Mayes county, naming, among other defendants, Grand-Hydro. The purpose of the suit was to adjudicate the water rights to Spavinaw Creek and Grand River under the 1905 Act.

On April 26, 1935, the act creating Grand River Dam Authority (82 O.S. 1941 §§861-881, as amended), hereinafter referred to as GRDA, was approved, but, since it did not carry the emergency clause, it did not become effective until July 29, 1935, which was only 30 days before the expiration of the four-year period authorized for completing the works by Grand-Hydro.

This act gave GRDA the exclusive right to utilize the waters of Grand River for hydroelectric and other beneficial purposes. At the time of the enactment of said statute no part of the works contemplated in the permit issued to Grand-Hydro had been begun. Only surveys, soundings and tests had been made.

In 1937 the Oklahoma Planning and Resources Board was created and it succeeded to the powers formerly belonging to the State Engineer and the Conservation Commission (S.L. 1937, p. 73).

On December 7, 1937, GRDA was made a party defendant in the said City of Tulsa case.

On January 10, 1938, Grand-Hydro executed and delivered to GRDA an assignment, similar to a quitclaim deed, of all of its rights concerning the waters of Grand River arising out of its said permit and the works done thereunder, but without impairing the title to its lands and without prejudice to the rights of Grand-Hydro to collect the fair market value thereof.

On January 18, 1938, GRDA filed its answer and cross-petition in said City of Tulsa case, asserting its exclusive rights to use the waters of Grand River for hydroelectric purposes, and alleging that the permit issued to Grand-Hydro was invalid "for the reason that there had not been, prior to the issuance thereof, an adjudication by the proper district court of the rights of prior appropriators in and to the waters of said river and tributaries."

On January 26, 1938, Grand-Hydro filed in said cause its reply to the answer and cross-petition of GRDA, confessing the allegations of said answer and cross-petition.

On February 14, 1938, the district court of Mayes county in said City of Tulsa case entered a decree, finding and adjudging that prior to the issuance of the permit to Grand-Hydro, no hydrographic survey of Grand River had ever been made and no judicial determination of the appropriated and unappropriated waters of Grand River had been made by a court of competent jurisdiction, as required by law, and that, hence, the permit issued Grand-Hydro was prematurely issued and invalid and that, consequently, Grand-Hydro had no right to the use of the waters of Grand River for beneficial purposes. The court further adjudged that by the act creating GRDA, the absolute right to control, store and preserve the waters of Grand River for hydroelectric, irrigation, and recreation purposes was vested in GRDA, except certain rights of the cities of Miami, Vinita, Wagoner, Muskogee and Ft. Gibson to the flow of certain amounts of water of Grand River, and that no person, firm or corporation had since statehood acquired the right to appropriate any of the waters of Grand River to a beneficial use. Grand-Hydro excepted to said judgment, but perfected no appeal and the judgment became final.

On February 17, 1939, GRDA commenced this cause in the district court of Mayes county against Grand-Hydro and others to condemn, among other lands, 1462.48 acres belonging to Grand-Hydro, which included the Pensacola dam site, and to determine the damages suffered by Grand-Hydro in the taking of said land in connection with the construction of the Pensacola Dam. The commissioners appointed by the court appraised the damage suffered by Grand-Hydro in the taking of said lands at $281,802.74. Both Grand-Hydro and GRDA appealed from said award. On January 7, 1941, judgment was rendered in said cause fixing the damages of Grand-Hydro at $136,250, the judgment to relate back to November 29, 1940. In that case, the trial court instructed the jury not to allow Grand-Hydro dam site value as a part of its damages. Grand-Hydro appealed from said judgment. This court, on April 27, 1943, with two justices dissenting, reversed the judgment, holding that Grand-Hydro was entitled to dam site value. 192 Okla. 693, 139 P. 2d 798.

On May 17, 1945, the district court on second trial entered judgment, based upon the verdict of a jury, awarding Grand-Hydro damages in the sum of $800,000 together with interest at 6 per cent per annum on $418,197.26, from January 19, 1940, which as of December 1, 1948, amounts to approximately $1,075,000. GRDA appealed. On May 20, 1947, this court affirmed the judgment of the trial court, holding that under the doctrine of the law of the case Grand-Hydro is entitled to dam site value. The issuance of a mandate has been withheld pending a decision of the United States Supreme Court on a writ of certiorari asked by GRDA. Such a decision was rendered November 22, 1948, and will be hereinafter referred to. Since the mandate has not gone down, this court still has jurisdiction of the cause and if, as I believe, Grand-Hydro is clearly not entitled to dam site value, and the judgment appealed from is grossly excessive and does a great injustice to Grand River Dam Authority, and the decision on the first appeal should not be followed under the doctrine of the law of the case, this court should render a new decision fixing the damages at the amount allowed by the jury in the first trial and requiring a remittitur of all in excess of that amount.

1. In the first decision, 192 Okla. 693, 139 P. 2d 798, this court, by clear inference, held that the provisions of the 1905 Act, setting out the procedure for the issuance of permits to use the waters of streams for beneficial use and authorizing the forfeiture of permits granted, apply only to use of waters for irrigation purposes and does not apply to permits for the use of waters of hydroelectric and other beneficial purposes, and that the permit issued Grand Hydro was valid and could not be forfeited by the act creating GRDA but could only be canceled by appropriate legal action on the ground of abandonment or bad faith.

This decision is based upon the hypothesis that at the time of the appropriation of the lands of Grand-Hydro by GRDA, which the parties stipulate was January 19, 1940, Grand-Hydro had a vested right to construct works and use the waters of Grand River for hydroelectric purposes. The question, then, is whether the provisions of the 1905 Act, providing for the issuance of permits for the beneficial use of waters and the forfeiture of permits for failure to comply with the terms of the permits granted, applied to the permit granted Grand-Hydro. If they do, it seems clear that, in the absence of a hydrographic survey and an adjudication of water rights, as provided in 82 O.S. 1941 §§11 and 12, the permit gave Grand-Hydro no vested right and under the rule stated in Owens v. Snider, 52 Okla. 772, 153 P. 833, the permit was invalid. Furthermore, even if the permit had any validity, it was subject to cancellation or forfeiture by the granting to another of an exclusive right to appropriate the waters of Grand River for beneficial purposes by reason of the failure of Grand-Hydro to comply with the terms of the permit, as provided in 82 O.S. 1941 §51, which was a part of the 1905 Act.

The 1905 Act was comprehensive and referred to any beneficial use of the waters of the streams. Some sections mentioned irrigation purposes, others referred only to beneficial use, while others referred to both beneficial use and irrigation purposes. 82 O.S. 1941 §14 required the decree to state the purpose for which the water was to be used, thus clearly showing that the Legislature contemplated more than one purpose. That section also provided that as to water use for irrigation, the specific tract of land to which the use of water was appurtenant was to be stated in the decree. 82 O.S. 1941 §27 authorized to assignment of permits or licenses to appropriate waters without condition except as to the provision therein limiting the assignment for irrigation purposes only in connection with the ownership of the land. Then, 82 O.S. 1941 §34 made provision for the

transfer of the license to use water for irrigation purposes apart from the land in certain exceptional cases. The provision for the transfer of permits and licenses without condition, and the proviso thereto applicable only to permits and licenses for the use of water for irrigation purposes, clearly indicates that the 1905 Act was intended to govern, not only permits for irrigation purposes, but use of water for any beneficial purpose.

That the Legislature later understood that permits for purposes other than irrigation could be granted under the 1905 Act is clearly shown by the 1923 Law, 82 O.S. 1941 §577, which recognized that prior acquisitions for rights of water for water power purposes could be acquired. Likewise, by the 1927 Act, 82 O.S. 1941 §§483 and 484, the Legislature recognized that prior permits could have been granted for the use of water for water power purposes. Thus, the Legislature has twice construed the 1905 Act as governing permits for any beneficial use of water and not for irrigation purposes alone.

It seems clear, therefore, that this court was in error in the first opinion in saying that the 1927 Act was the first statute authorizing the granting of permits for power purposes. That Grand-Hydro and the Conservation Commission understood that at the time of the issuance of the permit to Grand-Hydro it was governed by the 1905 Act as well as by the 1927 Act is clear, for otherwise the provision of the permit, above quoted, that it was subject to and bound by chapter 40 of the Revised Laws of 1910, as amended, would not have been contained in both the application and the permit.

The 1905 Act applied to the granting and revocation of permits for the use of water for hydroelectric purposes, (a) because of the terms of the act itself, (b) because the Legislature in its subsequent acts clearly indicates so, and (c) because Grand-Hydro and the Conservation Commission in the appli-

cation for, and the issuance of, the permit construed it to be applicable.

2. Sections 11 and 12, of Title 82 O.S. 1941, which were a part of the 1905 Act, required that hydrographic surveys of each stream system should be made and that, after the completion of the hydrographic survey, an adjudication of all rights to use the waters of each stream should be made before applications for permits to use the waters for beneficial purposes could be granted. In Owens v. Snider, 52 Okla. 772, 153 P. 833, and in Gay v. Hicks, 33 Okla. 675, 124 P. 1077, this court held, in cases involving use of water for irrigation purposes, that permits issued without prior hydrographic survey and adjudication of water rights were subject to collateral attack and invalid. Since, as we have pointed out above, the 1905 Act applies to the use of water for hydroelectric purposes as well as for irrigation purposes, it seems clear that the same rule would apply to permits for the use of water for hydroelectric purposes.

It follows, therefore, that the permit granted Grand-Hydro was invalid from its inception for the failure to comply with these conditions precedent.

3. We have set out in the above statement the facts, issues, and judgment in the said City of Tulsa case. That judgment found as a fact and legal conclusion that the permit issued Grand-Hydro was invalid from its inception, by reason of failure to perform conditions precedent with reference to making a hydrographic survey of Grand River and securing an adjudication of water rights prior to the issuance of the permit. Grand-Hydro and GRDA were parties in that case. The issue, as to the validity of the permit, was presented in the answer and cross-petition of Grand River Dam Authority and Grand-Hydro did not contest the issue but confessed it. Under the 1905 Act, the district court of Mayes county had jurisdiction of the subject matter, namely, the determination of the validity of

the permit. The jurisdictional prerequisites were present in that case, namely, jurisdiction of the subject matter, jurisdiction of the parties, and power to render the particular judgment by reason of the issue having been made by the pleadings.

The applicable rule is stated in Cresslar v. Brown, 79 Okla. 170, 192 P. 417, as follows:

"Where a right, question, or fact is distinctly put in issue and directly determined by a court of competent jurisdiction in a former suit between the same parties or their privies, the former adjudication of that fact, right, or question, is binding on the parties and their privies in a subsequent suit, irrespective of whether or not the causes of action are the same.

As pointed out above, the decision in the City of Tulsa case was correct, but whether correct or not the judgment is conclusive on the parties. Fitzsimmons v. City of Oklahoma City, 192 Okla. 248, 135 P. 2d 340.

The opinion on first appeal dismissed the effect of this final adjudication by saying:

"As we have said above, such adjudication of priority of rights was not essential to a permit to develop hydroelectric power."

But the judgment of the court was more than a finding that there was no adjudication of water rights. It was that the permit of Grand-Hydro was invalid for that reason and had no force and effect whatsoever, and that since statehood no one other than GRDA has acquired the right to appropriate any of the waters of Grand River to a beneficial use. The doctrine of estoppel by judgment does not permit us at this time to examine the correctness of the final judgment on this issue clearly presented and adjudicated.

4. As we have pointed out above, the permit issued Grand-Hydro was subject to the provisions of the 1905 Act. The terms of the permit were consis-tent with 82 O.S. 1941 §51 which was a part of the 1905 Act. That section reads as follows:

"The construction of the works shall be diligently prosecuted to completion, and if one-fifth of the work shall not be completed within one-half the time allowed, the Engineer may accept and approve as herein provided, an application for the use of all or any of the waters included in the permit issued to the prior applicant, and the right to use such waters under the former permit shall thereupon be forfeited: Provided, that the State Engineer shall allow an extension of time on request of the prior applicant, equal to the time during which the work was prevented by the operation of the law, beyond the power of said applicant to avoid."

One-fifth of the works was not constructed within two years after the issuance of the permit as required therein. No part of the works had been even commenced at the time of the enactment of the act creating GRDA. Section 51, which controls the terms of the permit, entered into and became a part of the permit, which, at most, constituted a contract between the state and Grand-Hydro. 6 R.C.L. 855; 12 Am. Jur. 769; 13 C.J. 560; 17 C.J.S. 782; Baker v. Tulsa B. & L. Ass'n, 179 Okla. 432, 66 P. 2d 45.

Section 51 authorized the State Engineer to forfeit the permit by the issuance of a new permit to another. The Conservation Commission, as successor to the State Engineer, had the right to so forfeit the permit. The Conservation Commission is a subordinate agency of the state and I think the Legislature itself could do what that statutory administrative agency could do. Subject only to the restrictions and limitations imposed by the State Constitution and the Constitution of the United States, a state Legislature has unlimited power to act in its sphere of legislation and to pass any law it sees fit. 49 Am. Jur. 253, note 18.

5. The 417 acres had no value as a dam site unless combined with the

other lands necessary for the reservoir basin; this was admitted by even the experts testifying for Grand-Hydro. The market value of land may be determined in consideration of a special or higher use when combined with other lands. It need not be measured only by the use of the land as a separate tract. McGovern v. New York, 229 U. S. 363, 33 S. Ct. 876. But in order for that special adaptability to be considered, there must be a reasonable probability of the lands in question being combined with other tracts for that purpose in the reasonably near future. Olson v. United States, 292 U.S. 246, 255, 54 S. Ct. 704. In the absence of such a showing, the chance of their being united for that special use is regarded as too remote and speculative to have any legitimate effect upon the valuation. McGovern v. New York, supra.

Here the record discloses the improbability, even the impossibility, of uniting the 417 acre dam site with the other reservoir lands, more than 50,000 acres, necessary for the special use of the dam site. The time of the taking of the land in question is stipulated to be January 19, 1940, and the instructions to the jury clearly set that date. At that time it is conceded that over half of the basin reservoir lands were held by GRDA. 82 O.S. 1941 §874 provides that the land acquired by the authority cannot be alienated by it. Nor could the land be acquired by Grand-Hydro or its ordinary grantee by eminent domain because the public purpose of the acquisition and use by GRDA could not be overcome except by express statutory authority or necessary inference, under the rule stated in Oklahoma City v. Local Federal Savings & Loan Ass'n, 192 Okla. 188, 134 P. 2d 565.

From what has been said, it seems clear that since the effective date of the act creating GRDA, at the latest, Grand-Hydro was without a legal right to dam Grand River and appropriate water from its waters for hydroelectric power and those powers and rights were exclusively in GRDA; that from the record the impracticability of uniting the necessary basin reservoir lands with the dam site lands is apparent; and that, therefore, the use of the land for dam site purposes by Grand-Hydro was remote and speculative.

It is inconceivable that any prudent business man would, under the circumstances, have paid any consideration for such nonexistent rights, which did not have even a speculative value. United States v. Powelson, above; United States v. Chandler-Dunbar Water Power Co., 229 U. S. 53, 33 S. Ct. 667.

By the enactment of the act creating GRDA, the Legislature necessarily determined that Grand-Hydro had not complied with the terms of the permit by diligently prosecuting the work and by completing one-fifth of the work within two years and that it was not possible for it to complete the works by August 29, 1935. This legislative determination was in accordance with the facts and should be binding upon the courts. See 11 Am. Jur. 794; 6 R. C. L. 114; 16 C.J.S. 280; 12 C.J. 798.

Grand-Hydro, in effect, concedes that after the effective date of the act creating GRDA, the latter had the sole right to utilize the waters of Grand River for hydroelectric purposes.

Therefore, assuming the initial validity of the permit issued to Grand-Hydro, the effect of the act creating GRDA was to cancel that permit, and from that date Grand-Hydro had no right to construct dams on Grand River and utilize its waters for hydroelectric purposes.

6. The Arkansas River is navigable up to the mouth of Grand River. Brewer-Elliott Oil & Gas Co. v. United States, 260 U.S. 77, 43 S. Ct. 60. Grand River is not navigable at the site of the Pensacola Dam. Under section 23 of the Federal Power Act, Title 16, sec. 817, U.S.C.A., the Federal Power Commission is given authority to determine, upon the filing with it of a declaration of intention by one desiring to build a

dam across a nonnavigable stream, whether the building of such a dam would affect the interest of interstate or foreign commerce and, if it finds that it will, a dam may not be constructed or maintained across such a stream until the person desiring to do so shall have applied for, and received, a license from the Commission. Grand-Hydro never filed such a declaration. On the other hand, GRDA filed such declaration of intention in December, 1937. On February 11, 1938, the Federal Power Commission determined that the building of the dam would affect the navigable stages of the Arkansas River. On May 3, 1938, GRDA filed a supplemental application for a license, and, on July 26, 1939, the license was issued to it. The license so granted was in its very nature exclusive. At the time of the appropriation of the lands by GRDA there was no possibility, let alone reasonable probability, that Grand-Hydro could have secured a Federal license to construct a dam at Pensacola Dam site.

As I interpret the decision of the United States Supreme Court rendered November 22, 1948, what I have just said is not contrary to that decision. The court there refused to disturb the decision of this court holding inadmissible evidence of the failure of Grand-Hydro to secure a Federal Power license as having a bearing on the measure of damages in a condemnation proceeding prosecuted by a **state agency under state law**. But the majority opinion intimated, and the decision of the four dissenting Justices clearly stated, that if the condemnation proceeding had been prosecuted by the United States or its licensee under the Federal Power Act, such evidence would be admissible as affecting the measure of damages. I see no reason why the rule should not be the same in both instances. The impossibility of securing a necessary Federal license would certainly be taken into consideration by a voluntary purchaser in fixing the amount he would pay for the land to be acquired for dam site purposes.

7. The next question is whether on this second appeal the decision on the first appeal should be followed under the doctrine of the law of the case. I think the exception to that rule, which is as well settled in this jurisdiction as the rule itself, should be applied. That exception was stated in 1908 in Oklahoma City Electric & Power Co. v. Baumhoff, 21 Okla. 503, 96 P. 758, as follows:

"The courts uniformly hold that an appellate court may review and reverse its former decision in the same case where it is satisfied that gross or manifest injustice has been done by its former decision, or where the mischief to be cured far outweighs any injury that may be done in the particular case by overruling a prior decision."

This statement has been several times quoted with approval, and was applied in Wade v. Hope and Killingsworth, 89 Okla. 64, 213 P. 549, and Carter Oil Co. v. Eli, 164 Okla. 273, 23 P. 2d 985. Here, as above stated, this court in the first appeal assumed that the permit held by Grand-Hydro was not governed by the provisions of the 1905 Act, and was still in effect on January 19, 1940, when the lands were appropriated, which was manifestly an error. It is clear that a riparian owner, as such, has no right to prevent the natural flow of a stream by or across his land. 60 O.S. 1941 §60. The measure of recovery for the taking of these lands was the same as that for the many other tracts of reservoir land. The other owners have not been allowed dam site value in the cases appealed to this court. The judgment now on appeal unjustly enriches Grand-Hydro to the extent of some $938,000 at the expense of the citizens of the cities and towns and other communities who use electric energy produced by GRDA and who alone must satisfy the judgment by paying increased rates for electric energy. Assuming that the permit held by Grand-Hydro was valid when issued, it constructed no part of the works necessary to impound the waters and the permit was subject to forfeiture after August

29, 1933, as provided in 82 O.S. 1941 §51, for failure to perform one-fifth of the work, and from that time at least Grand-Hydro's rights were purely speculative. As was said in United States v. Powelson, 319 U. S. 266, the project was from August 29, 1933, at least, "only a speculative venture—a promotional scheme wholly in futuro." The Legislature, by the enactment of the act creating GRDA, declared the public policy of this state to develop this great resource—Grand River—for the benefit of the public instead of for private profit, and the majority opinion does violence to this public policy by sanctioning a wrong to this state agency. Grand-Hydro will suffer no injury to its rights by now refusing to follow the decision on the first appeal, but will simply be denied an advantage it was never entitled to.

The amount fixed by the commissioners as condemnation money, $281,802.74, was paid into court on January 19, 1940. And since, in my opinion, Grand-Hydro is entitled to no more than the amount of the verdict in the first trial, $136,250, this court should require a remittitur of all in excess of that sum, as is frequently done in negligence cases involving judgments trivial in amount as compared with the judgment in this case. And since $281,802.74 was paid into court and Grand-Hydro could have had the use of it, no interest should be allowed on the judgment that should be rendered.

8. But, even under the view that dam site value should be allowed, I think a remittitur should be ordered of the interest on $518,197.26 from January 19, 1940, to May 17, 1945, the date of judgment. This interest amounts to $165,823.12. The question of interest was not mentioned in the instructions or expressly reserved by the court. By instruction No. 2, the court advised the jury "to ascertain and determine the market value of the lands involved in this case and fix just compensation for the taking thereof" as of January 19, 1940. This is probably as susceptible of the construction that interest was to be included as the contrary. Therefore, it cannot be said that it is unquestionably clear that the jury allowed no interest under the rule stated in St. Louis, E.R. & W.R. Co. v. Oliver, 17 Okla. 589, 87 P. 423, 10 Ann. Cas. 748. The presumption should be indulged that the jury included interest in the amount of the verdict. McEachin v. Kinkaid, 99 Okla. 123, 225 P. 951; Enterprise Seed Co. v. Leonard Seed Co., 96 Okla. 122, 220 P. 633; 18 Am. Jur. 917; 29 C.J.S. 1056, notes 18 and 19; 20 C.J. 811, note 19.

The net effect of the majority opinion is to approve a judgment for some $938,000 (which includes interest to December 1, 1948) for damages against GRDA for the action of the State of Oklahoma, acting in its sovereign capacity in enacting the act creating GRDA and thereby revoking the permit granted Grand-Hydro, when, as pointed out above, the State clearly had the right under 82 O.S. 1941 §51 to revoke the permit for failure to comply with its terms.

It seems clear that, under the authorities above cited, if the Federal Government were now condemning the land for power or flood control purposes, as I understand it is doing on two projects on Grand River below the Pensacola Dam, no allowance could be made for loss of dam site rights, and I think the same rule should apply in this court in a proceeding by a state agency created for the purpose of utilizing the water for public purposes.

For the foregoing reasons, I respectfully dissent.