# GRAND RIVER DAM AUTHORITY *v.* GRAND-HYDRO.

No. 6.  Argued October 12–13, 1948.—Decided November 22, 1948.

*Robert Leander Davidson* argued the cause for petitioner. With him on the brief was *Quince B. Boydstun.*

By special leave of Court, *Howard E. Wahrenbrock* argued the cause for the United States, as *amicus curiae*, urging reversal. With him on the brief were *Solicitor General Perlman, Assistant Attorney General Vanech, Stanley M. Silverberg, Roger P. Marquis, Willard W. Gatchell* and *Joseph B. Hobbs.*

*S. Frank Fowler* and *Robert Dale Hudson* argued the cause and filed a brief for respondent.

Mr. Justice Burton delivered the opinion of the Court.

The federal question in this action for condemnation under Oklahoma law is whether the Federal Power Act [1] had so far affected the use or value of certain land for power site purposes as to render inadmissible expert testimony which gave recognition to that land's availability for a power site. We hold that it had not. We thus see no adequate reason to reverse the Supreme Court of Oklahoma which had held that such testimony was properly admitted in a state condemnation proceeding.

This action was brought by the petitioner, Grand River Dam Authority, in the District Court for Mayes County, Oklahoma, to condemn and to award damages for the taking of 1,462.48 acres of that land from the respondent, Grand-Hydro. Four hundred and seventeen of these acres have been used by the petitioner as a site for its hydroelectric project, near Pensacola, on the Grand River in Oklahoma. The Commissioners, appointed by the court to assess the damages sustained by the appropriation of these lands, awarded the respondent $281,802.74. Each party, however, objected and demanded a jury trial. That trial resulted in a verdict and judgment for $136,250. On appeal, the Supreme Court of Oklahoma reversed the judgment and remanded the case for a new trial in conformity with its opinion. That opinion is important in determining the issues before us. 192 Okla. 693, 139 P. 2d 798. Six judges concurred in the opinion, one in the result and two dissented.

In 1945, the new trial resulted in a verdict and judgment for $800,000, together with interest on $518,197.26

---

[1] 41 Stat. 1063, as amended, 49 Stat. 838, 16 U. S. C. §§ 791a–825r.

from January 19, 1940, which was the date on which the amount fixed by the Commissioners had been paid into court. The Supreme Court of Oklahoma affirmed this judgment, seven to two. 200 Okla. 157, 201 P. 2d 225. We denied certiorari, 332 U. S. 841, but, on rehearing, granted it, 333 U. S. 852, because of the possible significance of the case in relation to the Federal Power Act. The United States filed a brief as *amicus curiae,* at each stage of the proceedings, supporting the contentions of the petitioner.[2]

The petitioner is a conservation and reclamation district, created in 1935 by the Oklahoma Legislature. It is a corporate agency of the State with power to develop and sell water power and electric energy in the Grand River Basin.[3] The respondent is a private corporation, organized in 1929 under the laws of Oklahoma. It has

---

[2] The United States has a further interest in the case because the petitioner's project has been financed largely through a federal loan and grant agreement. At the time of filing its brief in support of the petition for certiorari, the Government held approximately $14,000,000 of the petitioner's revenue bonds. See also, Act of July 31, 1946, 60 Stat. 743, as to the refinancing of these bonds.

[3] Grand River Dam Authority Act, Okla. Sess. L. 1935, c. 70, Art. 4 (Sen. Bill No. 395); Okla. Sess. L. 1936–1937, c. 70, Art. 1 (Sen. Bill No. 299), and Art. 2 (House Bill No. 3); Okla. Stat. Ann. tit. 82, §§ 861–881 (1938). The power of eminent domain is granted to the petitioner by § 2 (f) of the original Act.

"SECTION 2. POWERS, RIGHTS AND PRIVILEGES.

.          .          .          .          .

"(f) To acquire by condemnation any and all property of any Kind, real, personal, or mixed, or any interest therein within or without the boundaries of the District necessary or convenient to the exercise of the powers, rights, privileges and functions conferred upon it by this Act, in the manner provided by general law with respect to condemnation;"

.          .          .          .          .

Okla. Sess. L. 1935, c. 70, Art. 4.

the usual powers of a public utility, including the power to develop and use the waters of the Grand River, construct dams, generate and distribute electricity and acquire by right of eminent domain, purchase or otherwise, real and personal property for its purposes. The Grand River is treated as a nonnavigable stream, tributary to the Arkansas River which is a navigable stream.

Long prior to this litigation the respondent acquired the acreage in question for use in its proposed development of hydroelectric power on the Grand River. In 1931, it obtained from the State Conservation Commission a state license and permit to appropriate the waters of Grand River for beneficial use, to construct a dam on that river, and there to develop hydroelectric power for sale.[4] The respondent, however, never has filed with the Federal Power Commission any declaration of intention or application for a federal license relative to this project.

In February, 1934, the City of Tulsa filed an action in an Oklahoma court against the respondent and others seeking an adjudication of certain water rights in Spavinaw Creek and in the Grand River near Pensacola. During the pendency of that action the Oklahoma Legislature created the Grand River Dam Authority, petitioner herein, and granted to it exclusive authority to develop the Grand River in the manner described in the Act. In effect, the petitioner thus acquired a state priority over the respondent, although the respondent held title to certain water rights and to the land needed for the project. The petitioner thereupon was made a party to the Tulsa action. However, before filing its answer and cross-petition, the petitioner entered into an agreement for the voluntary assignment to it by the respondent of the

---

[4] Okla. Rev. L. 1910, c. 40; Okla. Sess. L. 1927, c. 70 (House Bill No. 62) ; Okla. Stat. Ann. tit. 82, §§ 451–510 (1938).

latter's rights to appropriate certain river waters for the project.[5] It likewise secured from the respondent the latter's title to 45 acres essential to the dam site. In due course, judgment was rendered awarding to the petitioner a prior right to control and appropriate the required water from the river and stating that the respondent had no right therein. The petitioner secured from the respondent a voluntary conveyance of title to ten additional acres and also of certain rights of entry upon 362 acres. These made up the 417 acres referred to as the dam site. As later found by the Supreme Court of Oklahoma—

> "The conveyances of the land were made on condition that the consideration would later be determined by agreement or condemnation and the assignment was on the condition provided for therein:
>
> " 'It is understood, however, that this assignment and conveyance shall not, in any way, affect or impair the title of Grand-Hydro to any lands owned by it, or any interests therein, and if any lands or interests therein owned by the said Grand-Hydro are acquired by the Grand River Dam Authority by purchase or condemnation, the value thereof or damage thereto shall be ascertained and determined as though this assignment and conveyance had never been made.' " *Grand River Dam Authority* v. *Grand-Hydro,* 200 Okla. 157, 158, 201 P. 2d 225, 227.

The parties being unable to agree upon the price for the land, the petitioner filed the present action in February, 1939. The petition made no reference to the Federal Power Act or to rights claimed thereunder. The petitioner, on the other hand, based its claim upon the

---

[5] This lower court proceeding is thus described in *Grand-Hydro* v. *Grand River Dam Authority,* 192 Okla. 693, 697–698, 139 P. 2d 798, 803–804.

right to acquire the land by condemnation "in the manner provided by general law with respect to condemnation" which had been granted to the petitioner by the Grand River Dam Authority Act.[6]  The project was to be located on the upper reaches of the Grand (or Neosho) River, near Pensacola, above the river's confluence with Spavinaw Creek.  In the meantime, on December 15, 1937, the petitioner had filed with the Federal Power Commission a declaration of intention under § 23 (b) of the Federal Power Act.[7]  In that declaration the petitioner stated that—

> "The construction of said project will probably not affect present or prospective navigation for the reason that the Grand River is not a navigable stream in law or in fact, and the navigability of the Arkansas and Mississippi rivers will not be appreciably affected thereby.  The construction of said project will

---

[6] See note 3, *supra.*

[7] "SEC. 23. . . .

"(b) . . . Any person, association, corporation, State, or municipality intending to construct a dam or other project works across, along, over, or in any stream or part thereof, other than those defined herein as navigable waters, and over which Congress has jurisdiction under its authority to regulate commerce with foreign nations and among the several States shall before such construction file declaration of such intention with the Commission, whereupon the Commission shall cause immediate investigation of such proposed construction to be made, and if upon investigation it shall find that the interests of interstate or foreign commerce would be affected by such proposed construction, such person, association, corporation, State, or municipality shall not construct, maintain, or operate such dam or other project works until it shall have applied for and shall have received a license under the provisions of this Act.  If the Commission shall not so find, and if no public lands or reservations are affected, permission is hereby granted to construct such dam or other project works in such stream upon compliance with State laws."  49 Stat. 846, 16 U. S. C. § 817.

not affect any public lands or reservations of the United States, or the interests of interstate or foreign commerce."

If the Commission had agreed with the foregoing statement, § 23 (b) would have permitted construction of the dam merely upon petitioner's compliance with state laws. However, on February 11, 1938, the Commission found that—

"(c) The construction and operation of said project as proposed by the declarant will affect navigable stages of the Arkansas River, a navigable water of the United States, to which said Grand River is tributary;

"The Commission therefore *finds* that:

"The construction and operation of said project in the manner proposed by the declarant will affect the interests of interstate commerce."

Thereupon, the petitioner sought and, on July 26, 1939, secured from the Commission the federal license required for the project as one affecting navigable waters and reservations of the United States. The petitioner, however, has not, by amendment or otherwise, based its right of condemnation in the present case upon the Federal Power Act or upon any federal license issued thereunder.

This proceeding was brought in an Oklahoma court, by a government agency of Oklahoma, to exercise a right of condemnation granted by Oklahoma. It does not seek to condemn or to award damages for water rights. It seeks only to condemn certain land and to assess damages due to the taking of that land. At the original trial, the court excluded from the jury evidence of the value of the land insofar as such evidence was based upon the availability of that land for a dam site. On appeal, the Supreme Court of Oklahoma held that such exclusion constituted reversible error and it remanded the case for

retrial in conformity with its opinion. That opinion stated the law of Oklahoma as follows:

"The measure of compensation in such case is the fair market or cash value of the land condemned. City of Tulsa v. Creekmore, 167 Okla. 298, 29 P. 2d 101. In that case the court, speaking of the elements to be considered in determining market values, said:

" 'It is the market value that is the test and not its value for some particular use to which it might be subjected, although its adaptability to this particular use may be considered as one of the factors in ascertaining the market value when they enter into and affect the cash market value of the property. Revell v. City of Muskogee, 36 Okla. 529, 129 P. 833; Public Service Co. v. Leatherbee, 311 Ill. 505, 143 N. E. 97.'

"And in the syllabus by the court the fair cash or market value of land taken in eminent domain is defined as follows:

" 'By fair market value is meant the amount of money which a purchaser willing but not obliged to buy the property would pay to an owner willing but not obliged to sell it, taking into consideration all uses to which the land was adapted and might in reason be applied.'

"With reference to the question of adaptability or availability for a particular use as an element in determining market value, the court held as follows:

" 'In determining the market value of a piece of real estate for the purposes of a taking by eminent domain, it is not merely the value of the property for the use to which it has been applied by the owner that should be taken into consideration, but the possibility of its use for all purposes, present and prospective, for which it is adapted and to which it might

in reason be applied, must be considered, and its value for the use to which men of prudence and wisdom and having adequate means would devote the property if owned by them must be taken as the ultimate test.'

"The above case contains a reasonably clear statement of the law obtaining in this state and which must be applied here. The condemnee is ordinarily entitled to compensation measured not only by the value of the land for the use to which he has applied it, but the value thereof for all possible purposes, present and prospective, to which he or his ordinary grantee might legally apply the same." *Grand-Hydro* v. *Grand River Dam Authority,* 192 Okla. 693, 694, 139 P. 2d 798, 800.

After retrial and on a second appeal to it, the Supreme Court of Oklahoma reaffirmed the law of that State in the following terms, and pointed to the federal question which the petitioner and the United States, as *amicus curiae,* now place before us:

"In this appeal the new or different facts and issues presented consist of the competency of the testimony, as presented in the last trial, of the expert witnesses as to the market value of the dam site; the submission of such testimony to the jury under proper instructions; the effect of Grand-Hydro's lack of a permit from the Federal Power Commission; the trial court's refusal to allow counsel to argue to the jury that the condemned land had no dam site value because of such fact; and the allowance of interest.

. . . . .

"Appellant contends that the passage of the act creating the Authority was, in effect, a forfeiture of the Grand-Hydro [state] permit and therefore it was not entitled to recover the dam site value of the

lands condemned. If such was the intent of the Legislature in passing the act, it was in violation of the Constitution, art. 2, sec. 24. The state cannot, through its law-making body, remove the principal value of private property and, through its established agency acquire the property by condemnation, basing the reimbursement to the owner on the reduced value. If it were otherwise, it would be possible to circumvent the above section of our Constitution. . . .

.      .      .      .      .

"The testimony of the expert witnesses as introduced was, therefore, competent to prove the dam site value of the property and was in accord with our opinion on the former appeal. . . .

"Although the Authority had been granted a license by the Federal Power Commission granting it the exclusive right to use the 417-acre tract as a dam site, it could not thereby take private property without just compensation." *Grand River Dam Authority* v. *Grand-Hydro,* 200 Okla. 157, 160, 201 P. 2d 225, 227, 228.

As the question is thus presented whether the Federal Power Act has so far affected the use or value of this land for power site purposes as to deprive it of all fair market value for those purposes and thus deprive the evidence of such value of all probative weight in this case, the fact that the state court purported to rest its decision largely on state law does not eliminate our duty to consider the question to the extent that it arises under federal law.[8] Again, it is suggested that the Federal

---

[8] See *Enterprise Irrigation Dist.* v. *Farmers Mutual Canal Co.,* 243 U. S. 157, 164; *Nutt* v. *Knut,* 200 U. S. 12, 19; and *United States* v. *Bellingham Bay Boom Co.,* 176 U. S. 211, 218. See also, *Davis* v. *Wechsler,* 263 U. S. 22, 24–25; and *American Railway Express Co.* v. *Levee,* 263 U. S. 19.

Power Act has superseded the state law and has set up a new standard of valuation binding upon the state even in a condemnation proceeding under state law. It is, of course, for us to examine whether questions of federal law were necessarily, although only impliedly, adjudicated by the state court. We accept the law of Oklahoma, set forth in the above quotations, as stating the proper measure of the value to be given to this land in this state proceeding. The respective parties have put different interpretations upon this statement of the Oklahoma law but the Supreme Court of that State has settled the issue in favor of the respondent's interpretation. The petitioner points to the following statement of the Oklahoma court:

> "The condemnee is ordinarily entitled to compensation measured not only by the value of the land for the use to which he has applied it, but the value thereof for all possible purposes, present and prospective, to which he or his ordinary grantee might *legally* apply the same." (Emphasis supplied.) *Grand-Hydro* v. *Grand River Dam Authority,* 192 Okla. 693, 694, 139 P. 2d 798, 800.

The petitioner then argues that, by virtue of its special act of incorporation, it holds a grant from Oklahoma of the exclusive right to develop this power site insofar as the State is concerned, and that it holds a grant from the United States of the only federal license that has been issued for the development of this site. The respondent, on the other hand, holds neither a state permit nor a federal license to use this land for a power site, although it originally acquired the land for that purpose and later conveyed it to the petitioner for that purpose, under an agreement which has postponed, until now, the determination of its purchase price. The petitioner, with the help of the respondent's conveyance to it of this

land and of the respondent's assignment to it of certain water rights, has secured judicial recognition of a prior right in itself to appropriate under state law certain water from the river, and has secured from the Federal Power Commission the above-mentioned license required under the Federal Power Act. Thus equipped, the petitioner has erected its dam on the dam site.

Accordingly, if the correct interpretation of the law of Oklahoma is that, in order for the respondent to introduce evidence of the value of the land for a dam site, the respondent must show not only that the land is reasonably and lawfully usable for that purpose, but also that the respondent itself holds a valid state permit or federal license for the construction of the dam on that land, then it is clear that the evidence would not be admissible. However, the Supreme Court of Oklahoma has settled this issue in favor of the respondent by holding that such a permit or license is not necessary in order for the evidence to be considered. As to the state permit, it has held expressly in its second opinion, as quoted at pp. 368–369 of this opinion, that the Grand River Dam Authority Act did not deprive the respondent of its right to compensation from the petitioner for the value of the dam site as such. In fact, the court there said that such a result would violate the Constitution of Oklahoma. In that same opinion, as quoted at p. 369 of this opinion, that court settled the issue that possession of a federal license by the respondent was not necessary in order for the respondent to introduce evidence of the value of this land as a dam site. The court so held when it expressly approved the action of the trial court in admitting the evidence in question when offered on behalf of the respondent in the absence of any federal license to the respondent and in the face of the federal license already issued to the petitioner.

The Supreme Court of Oklahoma stands squarely upon the law of the case which it announced upon the first appeal of this case. Its original statement as made at that time and as further interpreted on the second appeal holds that it was enough, for the present purposes, that the use of the land for a dam site was a reasonable and lawful use to which the land might be applied, without showing that the respondent itself held a permit or license authorizing it to build the dam. It may be surmised that the Supreme Court of Oklahoma, in approving the admission of the testimony by the trial court, also treated the petitioner as being the respondent's "ordinary grantee" of the title to this land. It is not necessary for us to determine whether that court relied upon one or the other, or both, of these alternatives. Reliance on either would make the disputed evidence admissible under the Oklahoma law.

Under this interpretation of the state law the answer to the remaining federal question is obvious. It is clear that the Federal Power Act cannot be said to have so far affected the use of this land for a power site as to destroy or otherwise render valueless the owner's right to use it for that purpose. That Act merely has attached conditions to the use of the land for a power site. The Act seeks to encourage rather than to prohibit the development of power sites. It seeks to preserve or enhance, not to destroy, their value as such. While the Act has limited the time and manner of the use of this particular land for a power site, the Act has left great benefits available to the owner from such a use of the land. The present large development of this site by the petitioner under a federal license is convincing proof of the value and availability of the land for that purpose.

In a voluntary purchase of this land by the petitioner, as a willing purchaser, from the respondent, as a willing

and unobligated seller, the value of it as a power site inevitably would have entered into the negotiated price. The petitioner and the respondent long have been competitors for the development of this site for power purposes. Each was granted, by state law, a right to condemn the land but the petitioner gained a priority over the respondent by virtue of the Grand River Dam Authority Act. The petitioner's purchase amounts to an acquisition of private property for a public use. The petitioner makes no claim to any right to make use of the natural asset of water power in the streams of the State without paying the fair market value of the land occupied for that purpose.

As between these two corporations seeking to determine the sales price of this land, the Federal Power Act placed no limitation upon their voluntary negotiations. The present proceeding is in substance a part of their original agreement for the sale of the land by the respondent to the petitioner.

If either the United States, or its licensee as such, were seeking to acquire this land under the Federal Power Act, it might face different considerations from those stated above. The United States enjoys special rights and power in relation to navigable streams and also to streams which affect interstate commerce. The United States, however, is not a party to the present case. It is not asserting its right to condemn this land. The petitioner, likewise, is not seeking to enforce such rights as it might have to condemn this land by virtue of its federal license.[9] Accordingly, we express no opinion upon what would be the appropriate measure of value in a condemnation action brought by the United States or by one of its licensees in reliance upon rights derived under the Federal Power Act.

---

[9] 41 Stat. 1074, 16 U. S. C. § 814.

It has been suggested that the provisions of the Federal Power Act bearing upon the allowance of a valuation for the project as part of the rate base of a federal licensee may be material in this case.[10]  Whatever the relation of those provisions may be to this project, it is not such as to change the Oklahoma law as to the fair market value of the land between the parties to this case.  It may be that, at some later date when the petitioner, as a federal licensee, shall be ready to sell power, the Commission or other appropriate body will then give consideration to the value to be allowed for this land in the petitioner's rate base.  There is, however, nothing in the Federal Power Act that purports to prescribe the price which a purchaser of land may pay voluntarily and in good faith for land which it later incorporates into a project.  There also is nothing in the Act which prescribes that the seller, rather than the purchaser, or that the condemnee, rather than the condemnor, of land acquired for a project must absorb the reduction, if any, which is to be made later in the allowance of value for that land in the purchaser's rate base as compared with the original price paid for it by the purchaser in a negotiated purchase or in a state condemnation proceeding. As to the question whether the Federal Power Act should be interpreted as actually superseding the state law of condemnation and as restricting the measure of valuation which lawfully may be used by the courts of Oklahoma in a condemnation action for the acquisition of land for power site purposes by an agency of that State, there is nothing in the Federal Power Act to indicate that an attempt has been made by Congress to make such a nationwide change in state laws.[11]

---

[10] 41 Stat. 1073, 16 U. S. C. §§ 812, 813, and see 41 Stat. 1071, as amended, 49 Stat. 844, 16 U. S. C. § 807.

[11] Even in a condemnation action brought in a district court of the United States under authority of the Federal Power Act, the practice

There also has been a suggestion made of the possible
materiality in this case of those provisions of the Federal
Power Act which relate to the price to be paid by the
United States in the event that it takes over the project
of a licensee upon or after the expiration of a federal
license.[12]   The issues raised by that suggestion are com-
parable to those just discussed in relation to the rate base
of a federal project, except that such a recapture of the
project is even more remote than the determination of a
rate base for the computation of rates to be charged for
its product.   We accordingly express no opinion upon the
issues which may arise when, as and if the above-men-
tioned proceedings may be taken.

For these reasons, the judgment of the Supreme Court
of Oklahoma is

*Affirmed.*

MR. JUSTICE DOUGLAS, with whom MR. JUSTICE BLACK,
MR. JUSTICE MURPHY, and MR. JUSTICE RUTLEDGE join,
dissenting.

The result of this decision, no matter how it is ration-
alized, is to give the water-power value of the current
of a river to a private party who by reason of federal
law neither has nor can acquire any lawful claim to it.
The United States has asserted through the Federal
Power Act its exclusive dominion and control over this
water power.[1]   That Act specifies how one may acquire

and procedure is to conform as nearly as may be with that in the
courts of the state where the property is situated.   See 41 Stat. 1074,
16 U. S. C. § 814.

[12] 41 Stat. 1071, as amended, 49 Stat. 844, 16 U. S. C. § 807.

[1] The exclusive control which the United States has in the water
power of a navigable stream (*United States* v. *Chandler-Dunbar
Co.*, 229 U. S. 53, 69; *United States* v. *Appalachian Electric Co.*,
311 U. S. 377, 427–428) extends to the water power of a non-

a license to exploit it, § 23 (b), and the conditions under which the licensee must operate. See *First Iowa Coop. v. Federal Power Comm'n,* 328 U. S. 152.

Petitioner has such a license. Respondent has none and, for reasons unnecessary to relate here, concededly cannot obtain one. Respondent therefore has no claim to the water-power value which the law can recognize, if the policy of the Federal Power Act is to be respected. When respondent's claim is recognized, the effect is to make petitioner pay a private claimant for a privilege which only the United States can grant.

That is the bald result whether the condemnation takes place in a state or a federal court. Whatever the procedure, the consequence is to give private parties an entrenched property interest in the public domain, which the Federal Power Act was designed to defeat.

The public burden is the same and the impairment of the policy of the federal act is identical whether the judgment is entered by a state or a federal court. Never before, I believe, has a federal right been allowed less protection in a state court than it is entitled to receive in the federal court.[2]

---

navigable stream where private command over it is inconsistent with the federal program of control over navigation. *United States* v. *Willow River Co.,* 324 U. S. 499, 509. Federal regulation and control has the same effect in each case. *Oklahoma* v. *Atkinson Co.,* 313 U. S. 508, 525.

It has been found in this case (and is unchallenged here) that the construction and operation of this project will affect the navigable stages of the Arkansas River, a navigable water of the United States, to which the Grand River is tributary. See H. R. Doc. No. 242, 67th Cong., 2d Sess. 123 (1921); H. R. Doc. No. 107, 76th Cong., 1st Sess. 6 (1939); Act of August 18, 1941, 55 Stat. 645.

[2] Article VI of the Constitution makes Acts of Congress "the supreme law of the land" and directs that "the judges in every State shall be bound thereby."